RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 04a0417p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JUNE CARABELL; KEITH CARABELL; HARVEY
GORDENKER; FRANCES GORDENKER,

          *Plaintiffs-Appellants,*

     *v.*

UNITED STATES ARMY CORPS OF ENGINEERS; UNITED
STATES ENVIRONMENTAL PROTECTION AGENCY,

          *Defendants-Appellees.*

No. 03-1700

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 01-72797—Paul D. Borman, District Judge.

Argued: August 11, 2004

Decided and Filed: September 27, 2004[*]

Before: BATCHELDER and GIBBONS, Circuit Judges; STAFFORD, District Judge.[**]

---

## COUNSEL

**ARGUED:** Paul R. Bernard, DICKINSON, WRIGHT, PLLC, Detroit, Michigan, for Appellants. Todd S. Kim, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. **ON BRIEF:** Paul R. Bernard, Timothy A. Stoepker, DICKINSON, WRIGHT, PLLC, Detroit, Michigan, for Appellants. Todd S. Kim, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. M. Reed Hopper, PACIFIC LEGAL FOUNDATION, Sacramento, California, for Amicus Curiae.

---

## OPINION

---

     STAFFORD, District Judge. Plaintiffs appeal the summary judgment for the defendants in this action to review final agency action under the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251-1387. We affirm.

---

[*] This decision was originally issued as an "unpublished decision" filed on September 27, 2004. On November 15, 2004, the court designated the opinion as one recommended for full-text publication.

[**] The Honorable William Stafford, United States District Judge for the Northern District of Florida, sitting by designation.

I.

Plaintiffs, June Carabell, Keith Carabell, Harvey Gordenker, and Frances Gordenker (collectively, "Carabells"), own 19.61 acres of property in Chesterfield Township, Macomb County, Michigan. In prehistoric times, this property was submerged under Lake St. Clair. As the lake receded over time, some areas of the Carabells' property remained covered by wetlands. Today, the property--located approximately one mile northwest of Lake St. Clair--encompasses 15.96 acres of wooded wetlands, constituting one of the last remaining large forested wetland parcels in Macomb County.

The Carabells want to construct a large multi-family condominium development on their property. The property is shaped like an inverted right triangle, the hypotenuse of which runs from the southwestern corner of the parcel at a 45 degree angle to the northeast corner. Following the hypotenuse and separating the Carabells' property from the adjacent property is an unnamed ditch. When the ditch was excavated, the spoils were cast to either side of the ditch, creating upland berms approximately four feet wide along the banks of the ditch. The berm edging the Carabells' property serves to block immediate drainage of surface water out of the parcel into the ditch. Wooded conditions exist up to the upland rim of the ditch. At the northeastern corner of the property, the ditch connects to the Sutherland-Oemig Drain, which empties into the Auvase Creek, which empties into Lake St. Clair, which is part of the Great Lakes drainage system. Although the record does not establish the direction of water flow in the ditch, the ditch empties either into the Sutherland-Oemig Drain at the northeastern corner of the property, or into ditches at the southwestern corner of the property that--like the Sutherland-Oemig Drain--outlet into Auvase Creek and eventually into Lake St. Clair.

In 1993, the Carabells applied to the Michigan Department of Environmental Quality ("MDEQ") for a permit to fill 15.9 acres of the forested area of their property for construction of a 130-unit condominium complex. The MDEQ initially denied their application after the United States Environmental Protection Agency ("EPA") and the United States Fish and Wildlife Service filed comments opposing the application. The denial was based on findings that "the proposed activity would have a significant adverse impact on the natural resources, public interest and public trust held in the subject wetlands." J.A. at 667. On appeal, a state administrative law judge ("ALJ") ordered the MDEQ to issue the Carabells a state permit for a 112-unit alternative condominium development with on-site wetland enhancement. Consistent with the ALJ's order, a permit was issued in November of 1998 over the EPA's objections. The permit specifically stated that "[a]uthority granted by this permit does not waive any jurisdiction of the U.S. Army Corps of Engineers or the need for a federal permit." J.A. at 49.

Soon after the permit was issued, the EPA notified the MDEQ that the state-issued permit did not constitute authority under the CWA for the permitted activities. The EPA asserted its federal jurisdiction over the Carrabells' project under the CWA, and it advised the MDEQ that the United States Army Corps of Engineers ("Corps") had the authority under the CWA to process a federal permit application by the Carrabells. Although the Carrabells contested federal jurisdiction over their project, they nonetheless applied to the Corps for a permit to place 57,437 cubic yards of fill on the wetland. The application indicated that they would disrupt 15.87 acres of wetland but would dredge and replant 3.74 acres of wetland.

On September 11, 2000, after three site inspections, the Corps issued its permit evaluation, stating that the operation and use of the proposed activity would have major, long term, negative impacts on water quality, on terrestrial wildlife, on the wetlands, on conservation, and on the overall ecology of the area. The Corps also stated that issuance of the permit would have minor negative impacts on downstream erosion and sedimentation, on flood hazards and floodplain values, and on aquatic wildlife. By letter dated October 5, 2000, the Corps notified the Carabells that their application for a permit had been denied. In its letter, the Corps stated:

> Your parcel is primarily a forested wetland that provides valuable seasonal habitat for aquatic organisms and year round habitat for terrestrial organisms.

> Additionally, the site provides water storage functions that, if destroyed, could result in an increased risk of erosion and degradation of water quality in the Sutherland-Oemig Drain, Auvase Creek, and Lake St. Clair. The minimization of impacts to these wetlands is important for conservation and the overall ecology of the region. Because the project development area is a forested wetland, the proposed project would destroy the resources in such a manner that they would not soon recover from impacts of the discharges. The extent of impacts in the project area when considered both individually and cumulatively would be unacceptable and contrary to the public interest.

J.A. at 519. The Corps further explained that the denial was also based on the Carabells' failure to overcome the presumption that there were less damaging practicable alternatives available.

The Carabells filed an administrative appeal of the Corps' decision denying their permit application. The Carabells argued (1) that the Corps lacked regulatory jurisdiction over the property because the wetlands were purportedly isolated from all outside waters by a spoil berm; (2) that the MDEQ's permit issuance decision barred the Corps from denying the Carabells a permit; and (3) that the Corps should have issued the Carabells a permit because their proposed activities met all statutory and regulatory requirements. After a site visit by the appeal review officer and an appeal conference, the Carabells were notified that all of their grounds for appeal lacked merit and that their appeal had been denied.

On July 26, 2001, the Carabells filed this action in federal district court. The case was referred to a magistrate judge, who held a hearing on the parties' cross-motions for summary judgment. The magistrate judge recommended that the Carabells' motion for summary judgment be denied and that the defendants' motion for summary judgment be granted. Among other things, the magistrate judge concluded that "because Plaintiffs' property is adjacent to neighboring tributaries of navigable waters and has a significant nexus to 'waters of the United States,' it is in fact not isolated, and is subject to the jurisdiction of the CWA." J.A. at 849. The magistrate judge also found that the denial of the Carabells' permit application was rational based on the Corps' conclusions regarding the likely effects of the Carabells' proposed project and on the Carabells' failure to demonstrate the absence of less damaging practicable alternatives.

After the Carabells filed objections to the magistrate judge's report and recommendation, the district court entered an order and judgment accepting the magistrate judge's recommendations and entering the report and recommendations as the court's own findings and conclusions. This timely appeal ensued.

II.

We review the district court's summary judgment order *de novo. Sierra Club v. Slater*, 120 F.3d 623, 632 (6th Cir. 1997). Where, as here, the district court's order is based on its review of an administrative agency's final decision, our review is governed by the Administrative Procedure Act ("APA"). *Id.* The APA provides that a court shall set aside an agency's decision only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). This standard of review is highly deferential, and the court is "not empowered to substitute its judgment for that of the agency." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416 (1971). An agency's factual findings are conclusive if supported by substantial evidence, and an agency's interpretation of its own regulations is entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulatory text. 5 U.S.C. § 706(2)(E); *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945); *United States v. Cinemark USA, Inc.*, 348 F.3d 569, 578 (6th Cir.2003).

III.

On appeal, the Carabells maintain that the district court erred when it (1) held that the Corps had CWA jurisdiction over the Carabells' property; and (2) affirmed the Corps' decision to deny the Carabells' permit application.

A.

The CWA requires landowners to obtain permits from the Corps before they discharge fill material into "navigable waters." 33 U.S.C. § 1344(a). Congress has defined "navigable waters" as "waters of the United States, including the territorial seas." 33 U.S.C. § 1362(7). The EPA and the Corps have defined "waters of the United States" to include:

> (1) All waters which are currently used, or were used in the past, or may be susceptible to use in interstate or foreign commerce, including all waters which are subject to the ebb and flow of the tide;
>
> (2) All interstate waters including interstate wetlands;
>
> (3) All other waters such as intrastate lakes, rivers, streams (including intermittent streams), mudflats, sandflats, wetlands, sloughs, prairie potholes, wet meadows, playa lakes, or natural ponds, the use, degradation or destruction of which could affect interstate or foreign commerce....
>
> (4) All impoundments of waters otherwise defined as waters of the United States under the definition;
>
> (5) Tributaries of waters identified in paragraphs (a)(1)-(4) of this section;
>
> (6) The territorial seas;
>
> (7) *Wetlands adjacent to waters (other than waters that are themselves wetlands) identified in paragraphs (a)(1)-(6) of this section.*

33 C.F.R. § 328.3(a) (Corps) (emphasis added); *see also* 40 C.F.R. § 122.2 (EPA). The Corps defines "adjacent" to mean "bordering, contiguous, or neighboring." 33 C.F.R. § 328.3(c). "Adjacent wetlands" include "wetlands separated from other waters of the United States by man-made dikes or barriers, natural river berms, beach dunes and the like." *Id.*

In this case, the district court determined that the Carabells' property contains wetlands adjacent to neighboring tributaries of navigable waters of the United States. Specifically, the magistrate judge, whose report was accepted by the district court, found that:

> Plaintiffs' property in this case is not isolated. It is undisputed that the property is adjacent to an unnamed ditch, and that the ditch connects to the Sutherland-Oemig Drain. The Drain, which neighbors a corner of the property, connects to Lake St. Clair.

J.A. at 847. Having concluded that the Carabells' property is not isolated from waters of the United States but instead constitutes "adjacent wetlands" within the meaning of the CWA, the district court decided that jurisdiction under the CWA existed. We agree with that decision.

The record here establishes that the unnamed ditch running along the hypotenuse of the Carabells' triangle-shaped property is separated from wetlands only by a man-made berm or barrier. At its

northeastern end, the ditch is connected to the Sutherland-Oemig Drain, a drain that empties into the Auvase Creek, which, in turn, empties into Lake St. Clair, which connects to Lake Huron and Lake Erie. At its southwestern end, the ditch is connected to other ditches, which--like the Sutherland-Oemig Drain--outlet into the Auvase Creek and eventually into Lake St. Clair. The ditch, then, is connected on either end to tributaries of "waters of the United States" as defined in the regulations. Whether water in the ditch flows northeasterly or southwesterly, the ditch is necessarily a tributary of "waters identified in paragraphs (a)(1)-(6) of...section [328.3(a)]." Because the wetlands on the Carabells' property are separated from a tributary of "waters of the United States" only by a man-made berm or barrier, they are considered "adjacent wetlands" under § 328.3(a)(7). As such, the wetlands at issue in this case fall within the jurisdiction of the Corps for purposes of the CWA.

The Supreme Court's decision in *Solid Waste Agency of Northern Cook County v. United States Army Corps of Engineers*, 531 U.S. 159 (2001) ("*SWANCC* "), does not persuade us otherwise. Before *SWANCC*, the Corps had defined its jurisdiction under the CWA as extending to intrastate waters that provide habitat for migratory birds. In rejecting the Corps' "Migratory Bird Rule," the *SWANCC* Court made clear that isolated intrastate waters cannot be subject to the Corps' jurisdiction under the CWA. *Id.* at 166.

A minority of courts have read *SWANCC* broadly to limit the Corps' jurisdiction under the CWA to navigable waters and non-navigable waters that directly abut navigable waters. *See, e.g.*, *In re Needham*, 354 F.3d 340, 345-46 (5th Cir. 2003). Conversely, a majority of courts, including this court, have narrowly interpreted *SWANCC* as holding only that the CWA does not reach isolated waters--in *SWANCC*, an abandoned, isolated gravel pit--having no connection with navigable waters. *See, e.g.*, *United States v. Rapanos*, 339 F.3d 447, 452-53 (6th Cir. 2003) (adopting a limited reading of *SWANCC* and concluding that the CWA reached a roadside ditch and its adjacent wetlands), *cert. denied*, 124 S. Ct. 1875 (2004); *United States v. Deaton*, 332 F.3d 698, 702 (4th Cir. 2003) (same).

In *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 135 (1985), the Supreme Court upheld the Corps' "adjacent wetlands" jurisdiction. Noting that Congress chose to define the waters covered by the CWA broadly, the Court wrote:

> Of course, it may well be that not every adjacent wetland is of great importance to the environment of adjoining bodies of water. But the existence of such cases does not seriously undermine the Corps' decision to define all adjacent wetlands as "waters." If it is reasonable for the Corps to conclude that in the majority of cases, adjacent wetlands have significant effects on water quality and the aquatic ecosystem, its definition can stand. That the definition may include some wetlands that are not significantly intertwined with the ecosystem of adjacent waterways is of little moment, for where it appears that a wetland covered by the Corps' definition is in fact lacking in importance to the aquatic environment--or where its importance is outweighed by other values--the Corps may always allow development of the wetland for other uses simply by issuing a permit.

*Id.* at 135 n.9. In *SWANCC*, moreover, the Court did not alter the *Riverside-Bayview* holding. Indeed, while noting Congress's "unequivocal acquiescence to, and approval of, the Corps' regulations interpreting the CWA to cover wetlands adjacent to navigable waters," *SWANCC*, 531 U.S. at 167, the *SWANCC* Court did not decide any issue with regard to "adjacent wetlands" under 33 C.F.R. § 328.3(a)(7). The *SWANCC* Court instead addressed the application of the Corps' Migratory Bird Rule to isolated ponds defined as "waters of the United States" under § 328.3(a)(3). 531 U.S. at 174.

Since *SWANCC*, this court has noted:

> In *Riverside Bayview* the Supreme Court concluded that the Corps regulation extending jurisdiction to adjacent wetlands was a reasonable interpretation in part because of what [*Solid Waste*] described as "the significant nexus between the wetlands and 'navigable waters.' " There is also a nexus between a navigable waterway and its nonnavigable tributaries....This nexus, in light of the "breadth of congressional concern for protection of water quality and aquatic ecosystems," is sufficient to allow the Corps to determine reasonably that its jurisdiction over the whole tributary system of any navigable waterway is warranted. The regulation, as the Corps reads it, reflects a reasonable interpretation of the Clean Water Act.

*Rapanos*, 339 F.3d at 452 (quoting *Deaton*, 332 F.3d at 712); *see also United States v. Rapanos*, 376 F.3d 629, 639 (6th Cir. 2004) (explaining that CWA jurisdiction over "adjacent wetlands" requires a significant nexus between the wetlands and navigable waters, "which can be satisfied by the presence of a hydrological connection"). Consistent with both *Rapanos* cases, the district court in this case determined that there is a "significant nexus" between the wetlands on the Carabells' property and the adjacent nonnavigable ditch abutting their property, a ditch that flows one way or another into other tributaries of navigable waters of the United States. We find no error in the district court's decision.

B.

The Carabells contend that, even if CWA jurisdiction exists over their property, the district court nonetheless erred by failing to overrule the Corps' decision on the merits of their permit application. Based on its review of the relevant regulations and the Corps' evaluation of the Carabells' permit application, the district court concluded that the Corps provided a rational basis for its decision. Because we agree that the Corps' decision was neither arbitrary nor capricious, we find no basis for disturbing the district court's determination.

IV.

For the foregoing reasons, we AFFIRM the district court's decision granting summary judgment to the defendants.