**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BACCARAT FREMONT DEVELOPERS,
LLC, a California limited liability
company,
           *Plaintiff-Appellant,*

               v.

UNITED STATES ARMY CORPS OF
ENGINEERS; TIMOTHY A. O'ROURKE;
SAN FRANCISCO DISTRICT OF UNITED
STATES ARMY CORPS OF ENGINEERS;
STATE WATER RESOURCES CONTROL
BOARD; CELESTE CANTU, Executive
Officer of State Water Resources
Control Board; SAN FRANCISCO
REGIONAL WATER QUALITY
CONTROL BOARD; LORETTA K.
BARSAMIAN, Executive Officer of
San Francisco Regional Water
Quality Control Board; CITY OF
FREMONT,
           *Defendants-Appellees.*

No. 03-16586

D.C. No.
CV-02-03317-CW

OPINION

Appeal from the United States District Court
for the Northern District of California
Claudia Wilken, District Judge, Presiding

Argued and Submitted
February 16, 2005—San Francisco, California

Filed October 14, 2005

Before: Dorothy W. Nelson, William A. Fletcher, and
Raymond C. Fisher, Circuit Judges.

14095

Opinion by Judge William A. Fletcher

**COUNSEL**

Robert R. Moore and David H. Blackwell, Allen Matkins Leck Gamble & Mallory, San Francisco, California, for the plaintiff-appellant.

Todd S. Kim, US Department of Justice, Washington, D.C., James A. Coda and David M. Shapiro, Office of the U.S. Attorney, San Francisco, California, Mark A. Rigau and Thomas S. Sansonetti, US Department of Justice, San Francisco, California, Jack M. Kerns, US Army Corps of Engineers, San Francisco, California, for the defendants-appellees.

**OPINION**

W. FLETCHER, Circuit Judge:

Baccarat Fremont Developers, LLC ("Baccarat") seeks to set aside the determination by the Army Corps of Engineers (the "Corps") that under the Clean Water Act ("CWA") it has jurisdiction over 7.66 acres of wetlands located on property owned by Baccarat in Fremont, California. The Corps asserts jurisdiction based on the fact that the wetlands are adjacent to waters of the United States. Baccarat argues that after the Supreme Court's decision in *Solid Waste Agency of N. Cook County v. United States Army Corps of Engineers*, 531 U.S.

159 (2001) ("*SWANCC*"), adjacency is no longer sufficient to establish the Corps' jurisdiction under the CWA. In Baccarat's view, the Corps failed to demonstrate an adequate hydrological or ecological connection between these particular wetlands and the adjacent waters of the United States. We affirm the district court's grant of summary judgment in favor of the Corps.

## I.  Background

In July 1997, Baccarat purchased a 30.98 acre site ("the site") near San Francisco Bay in Fremont, California, on which it planned to develop a six-building office, research, and manufacturing facility. The site is roughly rectangular. It is bordered on the north by Cushing Parkway, on the east by Fremont Boulevard, and on the south and west by property owned by the Alameda County Flood Control District ("ACFCD"). Two ACFCD flood control channels run parallel to the southern and western boundaries of the site. The flood control channels are navigable and connect with the Bay.

The site contains 7.66 acres of wetland. The wetlands are separated from the flood control channels by man-made berms, which follow the southern and western boundaries of the site. A maintenance road runs on top of the berms. If the berms were removed, the wetlands would connect directly to the flood control channels. Baccarat asserts that if the berms were removed, the wetlands would drain entirely. At the closest point, the wetlands are 65-70 feet from the flood control channels. The wetlands on the site are separated into six delineated areas, five of which are at issue in this case. The sixth area (designated Wetland 4) receives tidal flow through a culvert from an ACFCD channel, and the Corps' jurisdiction over the wetlands in that area is not in dispute.

In February 1998, at Baccarat's request, the Corps' San Francisco District ("the District") determined that it had jurisdiction under the CWA over 7.66 acres of wetland on the site.

Baccarat then sought a permit from the District to fill 2.36 of those acres. On January 29, 2001, Baccarat requested that the Corps reconsider its jurisdiction over the wetlands on the site in light of the Supreme Court's decision in *SWANCC*. By a letter dated May 8, 2001, the District reaffirmed its determination of jurisdiction, explaining that *SWANCC* "did not eliminate the Corps' authority to regulate wetlands adjacent to a tidal waterway." The District noted that the flood control channels are "within 250 feet of the site's western and southern boundaries," and that under 33 C.F.R. § 328.3(c), the presence of the man-made berms did not defeat adjacency. Finally, the District noted that water from the wetlands would flow into the flood control channel during storms if not for the man-made berms.

Baccarat appealed the District's determination to the Corps' South Pacific Division ("the Division"). After an appeal conference and site visit, the Division issued its decision on October 25, 2001. The Division rejected Baccarat's contention that *SWANCC* modified the Corps' jurisdiction over adjacent wetlands. However, the Division found that the District had not provided sufficient evidence for its adjacency determination, and that the District's finding that the wetlands would drain into the ACFCD channels but for the berms was irrelevant to the jurisdictional determination. The Division remanded to the District.

On January 28, 2002, the District determined once again that the wetlands on the site are adjacent to tidal waters and thus subject to the Corps' jurisdiction under the CWA. In an accompanying Memorandum for Record, the District set forth six reasons for so holding: (1) that barriers such as berms do not defeat adjacency pursuant to 33 C.F.R. § 328.3(c); (2) that the wetlands are in reasonable proximity to the ACFCD flood control channels; (3) that the wetlands serve important functions that contribute to the aquatic environment in general and to the nearby tidal waters in particular; (4) that the wetlands' functions are particularly important given the reduction of

wetlands in the San Francisco Bay area; (5) that the wetlands are within the 100 year floodplain of tidal waters; and (6) that the wetlands are part of a hydric soil unit that is contiguous with the area covered by tidal waters. The District noted that it agreed with the Division that it was irrelevant to the jurisdictional determination that the wetlands would drain into the ACFCD channels but for the berms. The District's January 28, 2002, decision was the Corps' final decision under 33 C.F.R. § 331.10.

On February 6, 2002, the Corps offered Baccarat a permit to fill 2.36 acres of wetland, subject to the condition that it (1) create on-site a minimum of 2.36 acres of seasonal freshwater wetlands and (2) enhance the remaining 5.3 acres of existing brackish wetlands. Baccarat signed the permit, reserving the right to seek judicial review of the Corps' jurisdictional determination. The permit was issued on March 1, 2002.

Baccarat sued the Corps in California Superior Court, seeking declaratory and injunctive relief from the Corps' determination that it has jurisdiction under the CWA. Baccarat also named as defendants Lt. Colonel O'Rourke of the Corps; the State Water Resources Control Board and its Director, Celeste Cantu; the San Francisco Regional Water Quality Control Board and its Executive Officer, Loretta K. Barsamian; and the City of Fremont. The suit was removed to federal district court. The district court granted the City of Fremont's motion to dismiss for lack of jurisdiction, and remanded to state court Baccarat's claims against the state defendants. The district court granted summary judgment to the Corps, holding that the Corps has jurisdiction.

## II.   Discussion

### A.   Standard of Review

We review the district court's grant of summary judgment de novo. *Universal Health Servs., Inc. v. Thompson*, 363 F.3d

1013, 1019 (9th Cir. 2004). Viewing the evidence in the light most favorable to the nonmoving party, we ask whether there are any genuine issues of material fact in dispute and whether the district court applied the relevant substantive law correctly. *Far Out Prods., Inc. v. Oscar*, 247 F.3d 986, 992 (9th Cir. 2001).

Under the Administrative Procedure Act ("APA"), we may set aside an agency decision if it is "arbitrary, capricious, or an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). The arbitrary and capricious standard is appropriate for the resolution of factual disputes implicating substantial agency expertise. *Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 375-76 (1989). In reviewing an agency decision under the APA, we ask whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. *Id.* at 378. We may reverse under the arbitrary and capricious standard only if the agency has

> relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Pacific Coast Fed'n of Fishermen's Ass'ns, Inc. v. National Marine Fisheries Serv.*, 265 F.3d 1028, 1034 (9th Cir. 2001) (citation omitted).

### B.    The Corps' Adjacency Jurisdiction

[1] We conclude that the Corps has jurisdiction over wetlands under the Clean Water Act, 33 U.S.C. §§ 1251 *et seq.* The CWA prohibits the discharge of pollutants into navigable waters. *See* 33 U.S.C. §§ 1311(a), 1344(b), 1344(d) and

1362(12). "The term 'navigable waters' means the waters of the United States." 33 U.S.C. § 1362(7). The Corps has issued a regulation defining "waters of the United States" as follows:

(a) The term "waters of the United States" means

(1) All waters which are currently used, or were used in the past, or may be susceptible to use in interstate or foreign commerce, including all waters which are subject to the ebb and flow of the tide;

* * *

(3)  All other waters such as intrastate lakes, rivers, streams (including intermittent streams), mudflats, sandflats, wetlands, sloughs, prairie potholes, wet meadows, playa lakes, or natural ponds, the use, degradation or destruction of which could affect interstate or foreign commerce including any such waters;

* * *

(5)  Tributaries of waters identified in paragraphs (a)(1) through (4) of this section;

* * *

(7)  *Wetlands adjacent to waters (other than waters that are themselves wetlands) identified in paragraphs (a)(1) through (6) of this section.*

33 C.F.R. § 328.3 (emphasis added). The regulations further provide that the term " 'adjacent' means bordering, contiguous, or neighboring," and they specify that "[w]etlands separated from other waters of the United States by man-made dikes or barriers, natural river berms, beach dunes and the like are 'adjacent wetlands.' " 33 C.F.R. § 328.3(c).

**[2]** The parties agree that the ACFCD flood control channels contain waters of the United States. The Corps determined that the wetlands on Baccarat's site are adjacent to the flood control channels, thus placing them within the jurisdiction of the Corps pursuant to the adjacency clause in 33 C.F.R. § 328.3(a)(7). Baccarat argues that adjacency alone is insufficient to support the Corps' jurisdiction. In Baccarat's view, for the Corps to have jurisdiction, there must be a significant hydrological or ecological connection between the wetlands and the jurisdictional water on which the adjacency determination is based.

**[3]** The text of the CWA and the implementing regulations promulgated by the Corps give no indication that a significant hydrological or ecological connection is a condition of Corps jurisdiction over adjacent wetlands. Baccarat relies on the Supreme Court's decision in *SWANCC* to support its contention that adjacent wetlands must be hydrologically or ecologically connected to waters of the United States. *SWANCC*, however, did not address the Corps' adjacency jurisdiction. Rather, it invalidated the Corps' Migratory Bird Rule.

Under the Migratory Bird Rule, the Corps asserted jurisdiction based on the CWA over intrastate waters that migratory birds used as a habitat. *SWANCC*, 531 U.S. at 163-64. The waters at issue in *SWANCC* were "isolated ponds, some only seasonal, wholly located within two Illinois counties." *Id.* at 171. The Court held that the Migratory Bird Rule was not "fairly supported by the CWA," *id.* at 167, on the ground that reading the CWA to extend jurisdiction to inland ponds like those at issue in *SWANCC* would effectively read the term "navigable waters" out of the statute. *Id.* at 171-72. The Corps did not assert that the waters at issue in *SWANCC* were adjacent to waters of the United States, and the Court's opinion did not address the Corps' jurisdiction over adjacent wetlands.

**[4]** The Supreme Court had explicitly addressed the Corps' jurisdiction over adjacent wetlands based on the CWA in an

earlier case, *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121 (1985). In that case, the Court unanimously upheld the Corps' jurisdiction over wetlands adjacent to waters of the United States, reasoning that "the Corps' ecological judgment about the relationship between waters and their adjacent wetlands provides an adequate basis for a legal judgment that adjacent wetlands may be defined as waters under the Act." *Id.* at 134. In so holding, the Court acknowledged that some adjacent wetlands might not be environmentally significant to their adjoining bodies of water. Nevertheless, the Court concluded that the Corps had acted properly in defining all adjacent wetlands as waters of the United States. *Id.* at 135. In footnote 9, the Court wrote:

> Of course, it may well be that not every adjacent wetland is of great importance to the environment of adjoining bodies of water. But the existence of such cases does not seriously undermine the Corps' decision to define all adjacent wetlands as "waters." If it is reasonable for the Corps to conclude that in the majority of cases, adjacent wetlands have significant effects on water quality and the aquatic ecosystem, its definition can stand. That the definition may include some wetlands that are not significantly intertwined with the ecosystem of adjacent waterways is of little moment, for where it appears that a wetland covered by the Corps' definition is in fact lacking in importance to the aquatic environment — or where its importance is outweighed by other values — the Corps may always allow development of the wetland for other uses simply by issuing a permit.

*Id.* at 135 n.9 (citation omitted). In this passage, the Court rejected the idea that for the Corps to have jurisdiction over adjacent wetlands it must demonstrate a significant hydrological or ecological connection between the particular wetlands in question and the jurisdictional water to which it is adjacent.

As the Court explained, the fact that the Corps has determined that the majority of adjacent wetlands have significant effects on neighboring aquatic ecosystems is sufficient to support the Corps' assertion of jurisdiction over other wetlands that are not "significantly intertwined" with such ecosystems.

Baccarat argues that we should read footnote 9 of *Riverside Bayview Homes* differently. According to Baccarat,

> refusing to invalidate a regulatory "definition" on the grounds that "not every adjacent wetland is of great importance to the environment of adjoining bodies of water" is not the same thing as saying that in an individual case requiring a jurisdictional delineation by the Army Corps, *no* evidence of a hydrological and ecological connectivity is required. Every jurisdictional claim made by the Army Corps must be factually based. Otherwise, the Army Corps' claim of jurisdiction is arbitrary and capricious for failure to articulate a rational connection between the facts found and the choice made.

In our view, Baccarat misreads footnote 9. According to the Supreme Court, when the Corps is confronted with adjacent wetlands that are not "significantly intertwined" with the ecosystem of adjacent waterways, it "may . . . allow development . . . simply by issuing a permit." 474 U.S. at 135 n.9. Thus, the Court clearly contemplates the Corps' jurisdiction over adjacent wetlands, even when they lack a significant ecological connection with waters of the United States. Otherwise the issuance of a permit would be both unnecessary and ultra vires. We do not read *Riverside Bayview Homes* to deprive the Corps of jurisdiction over particular wetlands that fall within the adjacency regulation if they lack a significant hydrological or ecological connection to waters of the United States. Rather, under *Riverside Bayview Homes*, the Corps' determination that a majority of adjacent wetlands have important ecological connections to waters of the United

States is sufficient to support its regulations establishing jurisdiction over other adjacent wetlands that fall within the adjacency clause in 33 C.F.R. § 328.3(a)(7).

Baccarat's reading of *SWANCC* is similarly unpersuasive. *SWANCC* did not retreat from the view expressed in *Riverside Bayview Homes* that the Corps' determination that the majority of adjacent wetlands have an ecological connection to waters of the United Sates is sufficient to support broader jurisdiction over other adjacent wetlands. Indeed, *SWANCC* repeatedly referred to the holding of *Riverside Bayview Homes* — "that § 404(a) [of the CWA] extend[s] to nonnavigable wetlands adjacent to open waters" — without giving any indication that it intended to modify or overrule that unanimous ruling. *Id.* at 167-68, 172.

**[5]** *SWANCC* simply did not address the issue of jurisdiction over adjacent wetlands. The Court noted in *SWANCC* that to hold for the Corps, it would have "to hold that the jurisdiction of the Corps extends to ponds that are *not* adjacent to open water." *Id.* at 168 (emphasis in original). The fact that the Court in *SWANCC* refused to allow the Corps to extend its jurisdiction to waters that are *not* adjacent to jurisdictional waters on the basis of migratory bird patterns has no bearing on its earlier holding that the Corps has jurisdiction over wetlands that *are* adjacent to jurisdictional waters.

**[6]** Our decision in *Headwaters, Inc. v. Talent Irrigation District*, 243 F.3d 526 (9th Cir. 2001), does not support the conclusion that a significant hydrological or ecological connection is necessary for Corps jurisdiction over adjacent wetlands. In *Headwaters*, we upheld the EPA's jurisdiction over irrigation canals, finding that they were "tributaries" and thus fell within the regulatory definition of "waters of the United States." We distinguished *SWANCC* by noting that the irrigation canals were not isolated, but rather "receive[d] water from natural streams and lakes, and . . . [were] connected as tributaries to other 'waters of the United States.' " *Id.* at 533.

*Headwaters* might be read to suggest that when the question is whether a water is properly classified as a "tributary" subject to Corps jurisdiction, that water must exchange water, at least intermittently, with a water of the United States. However, *Headwaters* cannot be read to address the different question at issue here — whether a significant hydrological or ecological connection to a particular adjacent wetland is required for Corps jurisdiction.

[7] Baccarat's contention that a significant hydrological or ecological connection is required to support the Corps' jurisdiction over particular adjacent wetlands is thus not supported by the CWA, by the implementing regulations, by Supreme Court case law, or by our case law. We hold that no such connection is required, and that the district court appropriately granted the Corps' motion for summary judgment.

[8] In so holding, we join the Sixth Circuit in rejecting the idea that *SWANCC* modified the holding of *Riverside Bayview Homes*. *See Carabell v. U.S. Army Corps of Engineers*, 391 F.3d 704 (6th Cir. 2004). The facts in *Carabell* are remarkably similar to the facts here. The Carabells sought permission to fill 15.9 acres of wetland. The Corps declined to issue a permit. The Carabells then brought suit in federal court, arguing that the Corps lacked jurisdiction over the wetlands. The court described the relationship of the plaintiffs' wetlands to waters of the United States as follows:

> The record here establishes that the unnamed ditch running along the hypotenuse of the Carabells' triangle-shaped property is separated from wetlands only by a man-made berm or barrier. At its north-eastern end, the ditch is connected to the Sutherland-Oemig Drain, a drain that empties into the Auvase Creek, which, in turn, empties into Lake St. Clair, which connects to Lake Huron and Lake Erie. At its southwestern end, the ditch is connected to other ditches, which — like the Sutherland-Oemig Drain

— outlet into the Auvase Creek and eventually into Lake St. Clair. The ditch, then, is connected on either end to tributaries of "waters of the United States" as defined in the regulations.

*Id*. at 708. The Sixth Circuit concluded that

[b]ecause the wetlands on the Carabells' property are separated from a tributary of "waters of the United States" only by a man-made berm or barrier, they are considered "adjacent wetlands" under § 328.3(a)(7). As such, the wetlands at issue fall within the jurisdiction of the Corps for purposes of the CWA.

*Id*. at 708-09.

Like Baccarat, the Carabells argued that *SWANCC* modified *Riverside Bayview Homes* and limited the Corps' jurisdiction over adjacent wetlands. The Sixth Circuit emphatically rejected the argument:

In *SWANCC* . . . the Court did not alter the *Riverside-Bayview* holding. Indeed, while noting Congress's "unequivocal acquiescence to, and approval of, the Corps' regulations interpreting the CWA to cover wetlands adjacent to navigable waters," the *SWANCC* Court did not decide any issue with regard to "adjacent wetlands" under 33 C.F.R. § 328.3(a)(7).

391 F.3d at 709 (citation omitted).

[9] We note that even if the CWA did require demonstration of a significant nexus on a case-by-case basis (which it does not), there is no question that one exists here. In making its jurisdictional determination, the Corps found (1) that the wetlands on the site are in reasonable proximity to the ACFCD flood control channels; (2) that the wetlands serve

important functions that contribute to the aquatic environment in general and to the nearby tidal waters in particular; (3) that the wetlands' functions are particularly important given the reduction of wetlands in the San Francisco Bay area; (4) that the wetlands are within the 100 year floodplain of tidal waters; and (5) that the wetlands are part of a hydric soil unit that is contiguous with the area covered by tidal waters. Even viewing the evidence in the light most favorable to Baccarat, we cannot hold that these findings are arbitrary or capricious, as would be required to set them aside under the APA. *Marsh*, 490 U.S. at 376-77. Taken together, the Corps' findings would be more than sufficient to establish a significant nexus between the wetlands on the site and the flood control channels, were such a showing required.

## Conclusion

In *Riverside Bayview Homes*, the Supreme Court upheld the Corps' exercise of jurisdiction over adjacent wetlands as defined in 33 C.F.R. § 328.3(c). *SWANCC* did not modify *Riverside Bayview Homes*. The Corps' jurisdiction over wetlands falling within the adjacency clause in 33 C.F.R. § 328.3(a)(7) does not depend on the existence of a significant hydrological or ecological connection between the particular wetlands at issue and waters of the United States. Since there is no genuine issue of material fact in dispute as to whether the wetlands on the site fall within the Corps' jurisdiction, we affirm the district court's grant of summary judgment.

**AFFIRMED.**