NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0368n.06
Filed: May 25, 2006

No. 05-6570

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

CHEROKEE FOREST VOICES,                )
                                       )
    Plaintiff-Appellant,          )
                                       )
v.                                     )   ON APPEAL FROM THE UNITED
                                       )   STATES DISTRICT COURT FOR THE
UNITED STATES FOREST SERVICE,          )   EASTERN DISTRICT OF TENNESSEE
                                       )
    Defendant-Appellee.           )


Before: RYAN and COOK, Circuit Judges; GWIN, District Judge.[*]


COOK, Circuit Judge.   This case concerns challenges to two logging projects in the

Cherokee National Forest.  The plaintiff, a collection of environmental groups, claims that the

projects must be made consistent with a revised forest management plan that went into effect after

the projects' authorizations.  The plaintiff also claims that the expected revisions to the forest plan

should have been addressed in the environmental assessments accompanying the projects.  The

district court granted summary judgment to the Forest Service on both claims.  We reverse the

district court's judgment with respect to the first claim and hold that the projects must be made

consistent with the revised forest management plan.  We affirm the district court's judgment with

_____

[*]The Honorable James S. Gwin, United States District Judge for the Northern District of
Ohio, sitting by designation.

respect to the second claim because we find no deficiencies with the projects' environmental assessments.

I

A.

The Cherokee National Forest covers 640,000 acres in Eastern Tennessee. Prior to March 1, 2004, the forest was managed pursuant to the 1986 Land and Resources Management Plan ("Forest Plan" or "Plan"). In 1994, the Forest Service began revising the Forest Plan. The final revised Forest Plan was formally adopted on January 15, 2004, released on January 30, 2004, and became effective on March 1, 2004.

The Flatwoods and George Creek projects designate uses for the various parts of the forest. Although the stated purposes of the projects include habitat and tree management, blocking illegal roads and trails, and rehabilitating wildlife openings, Cherokee Forest Voices's ("CFV's") complaint focuses on the projects' plans for tree harvesting and road construction, both of which are to be achieved through commercial logging.

Both projects, together with their requisite Environmental Assessments ("EAs") and Findings of No Significant Impact ("FONSIs"), were approved before the revised Forest Plan became effective. CFV's timely appeals of the projects were rejected by the forest supervisor.

CFV's first claim, under § 6(i) of the National Forest Management Act of 1976 ("NFMA"), 16 U.S.C. § 1604(i), alleges various inconsistencies between the Flatwoods and George Creek projects and the revised Forest Plan. Specifically, CFV alleges that the projects authorize (1) logging in areas where logging is prohibited by the revised Forest Plan's logging restrictions; (2) logging and road-building in areas where such activity is prohibited by the revised Forest Plan's riparian prescriptions; and (3) logging based upon habitat goals of the prior Forest Plan that were substantially revised by the revised Forest Plan. CFV's second claim alleges that the Forest Service violated § 102 of the National Environmental Policy Act of 1969 ("NEPA"), 42 U.S.C. § 4332, by failing to adequately disclose, analyze, consider or address a proper set of alternatives to the proposed projects in light of the impending revisions to the Forest Plan.

Though the claims concern how the projects related to the revised Forest Plan itself, we focus much of our attention on the Forest Service's interpretation of the Plan in the Record of Decision ("ROD")/Environmental Impact Statement ("EIS"), dated January 15, 2004. The ROD addressed the Forest Plan's consistency with "permits, contracts, and other instruments for the use and occupancy" of National Forest System lands, as required by 16 U.S.C. § 1604(i)[1]:

---

[1]In fact, § 1604(i) requires "*resource plans* and permits, contracts, and other instruments" (emphasis added) to be consistent with "land management plans." CFV contends the Flatwoods and George Creek projects are governed by this section as "site-specific projects." *See Habitat Educ. Ctr., Inc. v. Bosworth*, 363 F. Supp. 2d 1090, 1104 (E.D. Wis. 2005). The Forest Service does not disagree. The parties thus implicitly regard the projects as either "resource plans" or "other instruments."

In the LMP [the Forest Plan] revision context, NFMA specifically qualifies the requirement [of consistency] in three ways: 1) these documents must be revised only "when necessary", 2) these documents must be revised "as soon as practicable", and 3) any revisions are "subject to valid existing rights".

> *In developing this revised LMP, implementing pre-existing decisions and the associated effects of that implementation were considered part of the baseline against which the alternatives were evaluated. Because these earlier decisions were considered in our effects analysis, their implementation is not in conflict with the revised LMP.* Exercising my discretion under NFMA, I have determined that it is not "necessary" to apply the revised LMP's standards retroactively, and I find that NFMA does not require revision of these pre-existing use and occupancy authorizations. As soon as practicable after approval of the revised LMP, the Forest Supervisor shall ensure that, subject to valid existing rights, all outstanding and future permits, contracts, cooperative agreements and other instruments for occupancy and use of affected lands are consistent with the revised LMP. On a case-by-case basis, the Forest Supervisor shall exercise his or her sound discretion in determining when such consistency is practicable.

(J.A. 434-35) (emphasis added.).

## B.

CFV's administrative appeals of the Flatwoods and George Creek projects laid the foundation for CFV's current arguments. In each appeal, CFV alleged that the Forest Service violated NEPA by failing to address in the EA the impending revision to the Forest Plan; and in the appeal of the George Creek project, CFV alleged that the project violated NFMA because it was inconsistent with the revised Forest Plan. The appeal of the Flatwoods project also alleged that the project conflicted with the revised Forest Plan, but it alleged less directly that the project violated NFMA. It concluded that "the Flatwoods decision is arbitrary and capricious and *may violate* the

NFMA because the project, which is disallowed by the Revised Plan, will actually take place when the Revised Plan is in effect." (J.A. 725) (emphasis added). We find, however, that this allegation sufficiently presented the issue for our review, in part because the Forest Service's denial of the Flatwoods appeal squarely addressed the issue of NFMA compliance.

In the denials of each of CFV's appeals, the Forest Service relied on the language in the revised Forest Plan's ROD to conclude that the projects were consistent with the revised Forest Plan. In particular, the denials cited the language quoted above that "it is not 'necessary' to apply the revised [Plan's] standards retroactively, and . . . that NFMA does not require revision of the[] pre-existing use and occupancy authorizations." (J.A. 435.) The Forest Service rejected CFV's NEPA claim on other grounds.

The district court sided with the Forest Service on what it considered to be the two separate aspects of CFV's NFMA claims. First, the court held that § 1604(i) did not require the Forest Service to modify the projects themselves (referring to them as "the proposed projects"). Second, the court refused to grant CFV prospective relief with respect to the contracts that would implement the projects.

The court held that the projects did not need to be modified because "substantial deference" was due to the Forest Service's interpretation that the revised Forest Plan was consistent with the projects. It cited the ROD's language that "implementing pre-existing decisions and the associated effects of that implementation were considered in [the revised Plan's] effects analysis, [and thus]

their implementation is not in conflict with the revised [Plan]." (J.A. 434-35.) The court then asked

whether "the Forest Service acted arbitrarily or capriciously in determining that the revised Forest

Plan took into consideration as a baseline the implementation of the [projects.]" (J.A. 30.) And here

the court addressed the *discontinuity* between the projects and the revised Forest Plan's riparian

regulations identified by the Forest Service's August 27, 2004 "Comparisons Between 1986 Forest

Plan and 2004 Revised Plan." It concluded that the conflicts did not pose a problem because—now

looking to the statute—"it is a reasonable interpretation that § 1604(i) does not require the revision

of projects that were approved prior to the adoption of a revised Forest Plan."[2] (J.A. 32.)

The district court found no need to address the second NFMA issue, whether to apply

prospective relief with regard to the contracts implementing the projects, because it concluded that

CFV failed to raise the issue during the administrative appeals of the projects. Moreover, the court

reasoned, the revised Forest Plan claimed to be consistent with the contracts implementing the

projects, and there was no evidence in the administrative record of CFV challenging the Plan.

The district court rejected CFV's NEPA claims on the ground that the Forest Service was

not required in an EA to consider the effects of a future, as-of-yet-unadopted policy change. It

considered CFV's "most compelling argument" to be that "the revised Forest Plan might be

---

[2]The revised Forest Plan provides for variances of the riparian restrictions when a "site-specific inter disciplinary field investigation determines the need to vary the width[s] [of the riparian corridor]," but because no "projects [sic] had been prepared for sale" at the time of the appeal, the court did not consider whether any site-specific investigations had occurred. (J.A. 31-32.)

considered as significant new information to be evaluated in a supplemental NEPA process pursuant to 40 C.F.R § 1502.9(c)." (J.A. 36.) But the court rejected this possibility because the Plaintiff "failed to show that the revision of the Forest Plan changed the potential impact of the projects on the human environment in a significant manner." (J.A. 36.) The court also rejected CFV's claim that the ranges of policy alternatives in the EAs were inadequate because they failed to reflect features of the then-proposed revised Forest Plan that were available to the agency at the time.

CFV timely filed a Notice of Appeal on October 10, 2005. On October 14, 2005, CFV filed a motion for injunction pending appeal. On October 31, 2005, this court denied the motion but ordered an expedited schedule for the case.

II

A.

The proper standard of review in this case was well-articulated by *Carabell v. U.S. Army Corps of Eng'rs*, 391 F.3d 704, 707 (6th Cir. 2004):

> We review the district court's summary judgment order de novo. Where, as here, the district court's order is based on its review of an administrative agency's final decision, our review is governed by the Administrative Procedure Act ("APA"). The APA provides that a court shall set aside an agency's decision only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). This standard of review is highly deferential, and the court is "not empowered to substitute its judgment for that of the agency." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416 (1971). An agency's factual findings are conclusive if supported by substantial evidence, and an agency's interpretation of its

own regulations is entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulatory text.  5 U.S.C. § 706 (2)(E).

(Citations omitted.)

B.

NFMA governs the Forest Service's regulation of the national forest system.  The Secretary of Agriculture, acting through the National Forest Service, is required to "develop, maintain, and, as appropriate, revise land and resource management plans for units of the National Forest System." 16 U.S.C. § 1604(a).  Such plans must "provide for multiple use and sustained yield of the products and services obtained therefrom . . . and, in particular, include coordination of outdoor recreation, range, timber, watershed, wildlife and fish, and wilderness." 16 U.S.C. § 1604(e).  The final plan divides a forest into management areas and stipulates how resources in each of these areas will be administered.  A forest plan must be revised when conditions in a forest "have significantly changed," but at least once every fifteen years.  16 U.S.C. § 1604(f)(5).  "Implementation of the forest plan is achieved through individual site-specific projects, and all projects must be consistent with the forest plan." *Northwoods Wilderness Recovery v. U.S. Forest Serv.*, 323 F.3d 405, 407 (6th Cir. 2003) (citing 16 U.S.C. § 1604(i); 36 C.F.R. § 219.10 (1999)).  *See Habitat Educ. Ctr., Inc. v. Bosworth*, 363 F. Supp. 2d 1090, 1104 (E.D. Wis. 2005).

Specifically, § 1604(i) provides:

> Consistency of resource plans, permits, contracts, and other instruments with land management plans; revision.  Resource plans and permits, contracts, and other instruments for the use and occupancy of National Forest System lands shall be consistent with the land management plans. Those resource plans and permits, contracts, and other such instruments currently in existence shall be revised as soon as practicable to be made consistent with such plans. *When land management plans are revised, resource plans and permits, contracts, and other instruments, when necessary, shall be revised as soon as practicable.* Any revision in present or future permits, contracts, and other instruments made pursuant to this section shall be subject to valid existing rights.

(Emphasis added.)  In addition, 36 C.F.R. § 219.10(e) (1999) provided:

> As soon as practicable after approval of the plan, the Forest Supervisor shall ensure that, subject to valid existing rights, all outstanding and future permits, contracts, cooperative agreements, and other instruments for occupancy and use of affected lands are consistent with the plan.

The only exception provided by § 1604(i)—that revisions "shall be subject to valid existing rights"—does not apply here, as the Forest Service has not argued that such rights were conferred by the projects.

The "final agency action[s]" that provide the basis for jurisdiction in this case are the Forest Service's decisions denying CFV's administrative appeals of the projects.  *See* 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review.").  In each appeal, the Forest Service relied on language from the ROD for the revised Forest Plan to reject CFV's claim that the projects were inconsistent with the revised Forest Plan and thus required revision.  Substantial deference is due to

the Forest Service's interpretation of a Forest Plan. *See Forest Guardians v. U.S. Forest Serv.*, 329 F.3d 1089, 1098 (9th Cir. 2003) ("[F]ederal courts are required to defer to an agency's reasonable interpretation of its own guidelines, . . . and the Service's decision can be overturned only if the phased-in reduction scheme is plainly erroneous or inconsistent with the Forest Plan." (citation omitted)).

The Forest Service's central argument is that it is unnecessary to revise the projects because the ROD interpreted the revised Forest Plan to be consistent with the Flatwoods and George Creek projects. For support, the Forest Service relies on the ROD's blanket statement that "implementing pre-existing decisions and the associated effects of that implementation were considered part of the baseline against which the alternatives [for the revised Forest Plan] were evaluated" and that therefore "their implementation is not in conflict with the revised [Plan]." (J.A. 434-35.) This reasoning is valid, if not necessarily sound: the Forest Service certainly could have revised the Forest Plan to *accommodate* the Flatwoods and George Creek projects and thereby rendered them consistent with the Forest Plan. And had these statements in the ROD been the Forest Service's only comments on the matter, this court would have accepted them, unless clearly erroneous.

But, as the district court found, to prevail in this case the Forest Service cannot rely only on the interpretation of the revised Forest Plan in the ROD. The August 27, 2004 Comparison acknowledges that the revised Forest Plan and the projects conflict, at least with respect to the revised Plan's riparian restrictions. With respect to the Flatwoods project, the Comparison concludes that

"Flatwoods would not comply with the Revised Plan for perennial riparian corridors," and, concerning the so-called "Streamside Management Zones," "[o]nly on the steeper slopes would the project not comply with the Revised Plan." (J.A. 785.) As regards the George Creek project, the Comparison likewise admits noncompliance. (J.A. 787.) This apparent variance from the Revised Plan forces the Forest Service to argue that § 1604(i) allows the Forest Service to determine whether (or not) to revise projects *even when those projects are inconsistent* with a revised Forest Plan.

In support of its view that § 1604(i) does not require the Service to revise pre-existing projects to be consistent with a revised Forest Plan, the Forest Service urges that "[p]hrases like 'as soon as practicable' and 'when necessary' clearly give the Forest Service discretion in how a new Forest Plan applies to projects developed under a prior Forest Plan." (Appellee's Br. 20.) The district court agreed.[3] We believe however that this reading of the statute contradicts the Forest Service's own regulations, *see* 36 C.F.R. § 219.10(e) (1999), and confounds logic. For were it entirely within the

---

[3]*See* Memorandum, J.A. 32:

> On its face, neither Section 1604(i) nor the implementing regulations refer to the revision of projects, but only refer to the revision of instruments, 'when necessary'. This Court finds that it is a reasonable interpretation that § 1604(i) does not require the revision of projects that were approved prior to the adoption of a revised Forest Plan in order to bring them in compliance with the revised Forest Plan.

There are two potential arguments here: 1) that the "when necessary" language grants the Service discretion to revise the projects when it sees fit; and 2) that the statute speaks of "instruments," not *projects*, so no revision of the Flatwoods and George Creek projects is necessary. CFV's position is that the projects are either "resource plans . . . permits, contracts, [or] other instruments," and the Forest Service does not contend otherwise. *See supra* n.1. We thus understand the district court to have adopted the first argument.

Forest Service's discretion to revise a project that conflicted with a revised Plan, it would be of no legal consequence that an existing "resource plan . . . permit, contract [or] other instrument[]" conflicted with a revised Forest Plan, and the third sentence of § 1604(i)—the sentence that includes the "when necessary" phrase—would have no operative effect. On the other hand, if "when necessary" is read to mean *when a conflict exists*, the statute makes perfect sense. The inclusion of "when necessary" would then serve to prevent the third sentence from being misunderstood as requiring an existing "resource plan . . . permit, contract [or] other instrument" to be revised even when no conflict existed with a revised Forest Plan. Based upon this plain reading of the statute, we hold that district court erroneously granted summary judgment to the Forest Service.

Because we disagree with the district court's statutory holding that a project could conflict with the revised Forest Plan without violating § 1604(i), we remand to the court questions preempted by its erroneous conclusion. Specifically, the district court will need to review the August 27, 2004 Comparison's conclusion as to the projects' consistency with the revised Plan's logging restrictions or early successional habitat limitations, determining whether those latter two determinations were "plainly erroneous or inconsistent with the Forest Plan." *Forest Guardians,* 329 F.3d at 1098.

This disposition moots the related issue confronted by the district court: whether prospective relief should be awarded to CFV as to contracts implementing the projects. Because we hold today that § 1604(i) requires the projects be consistent with the revised Forest Plan, the contracts implementing those projects must also be consistent with the revised Forest Plan. For that reason,

we have no cause to inquire whether CFV failed to exhaust its administrative remedies with respect to the contracts that would have implemented the projects as they are currently drawn.

## C.

The second issue concerns the National Environmental Policy Act and Environmental Impact Study compliance. NEPA requires federal agencies to prepare an EIS for "major federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). NEPA does not mandate "particular results," but only that the agency follow the necessary procedures in assessing the environmental effects of projects. *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989). NEPA's policy goals are:

> realized through a set of 'action-forcing' procedures that require that agencies take a hard look at environmental consequences and that provide for broad dissemination of relevant environmental information. Although these procedures are almost certain to affect the agency's substantive decision, it is now well settled that NEPA itself does not mandate particular results, but simply prescribes the necessary process.

*Id.* (quotation omitted). In the district court's words, "the Court may not substitute its judgment for the judgment of the agency, but rather must determine whether the defendant 'has, in fact, adequately stated the issue and taken a "hard look" at the environmental consequences of its decision.'" (J.A. 35) (quoting *Kelley v. Selin*, 42 F.3d 1502, 1518-19 (6th Cir. 1995) (quotation omitted)).

In the context of the NFMA:

> Forest plans, as well as site-specific proposals, must be prepared in compliance with National Environmental Policy Act, 42 U.S.C. § 4321, and the regulations contemplate the preparation of an appropriate Environmental Impact Statement as directed by the Policy Act as part of an integrated process. 16 U.S.C. § 1604(g)(1); 36 C.F.R. § 219.6(b). Federal regulations permit an agency that is planning a major federal action to conduct a less exhaustive Environmental Assessment to determine whether the proposed action will "significantly affect" the environment and thus whether an Environmental Impact Statement is required. 40 C.F.R. §§ 1501.4(b), 1508.9 (2001). If the Environmental Assessment reveals that the proposed action will significantly affect the environment, the agency must prepare an Environmental Impact Statement. *See id.* Conversely, if the agency makes a Finding of No Significant Impact, 40 C.F.R. § 1501.4(e), then it is not required to prepare an Environmental Impact Statement.

*Northwoods Wilderness Recovery*, 323 F.3d at 407.

CFV grounds its NEPA claims on § 4332(2)(E), which requires that "all agencies of the Federal Government . . . study, develop, and describe appropriate alternatives to recommended courses of action in any proposal which involves unresolved conflicts concerning alternative uses of available resources." An agency must follow § 4332(2)(E) even when it prepares an EA. 40 C.F.R. § 1508.9(b) ("[EAs] [s]hall include brief discussions of the need for the proposal, of alternatives as required by [§ 4332(2)(E)], of the environmental impacts of the proposed action and alternatives, and a listing of agencies and persons consulted."). CFV contends that the Forest Service violated NEPA by failing to consider the as-of-yet-unadopted revised Forest Plan in the EAs for the Flatwoods and George Creek projects.

But NEPA requires that EISs (and EAs) address the *environmental impacts* of proposed projects, not their legal status or consistency with proposed policy changes. *See Sierra Club v. U.S.*

*Forest Serv.,* 46 F.3d 835, 840 (8th Cir. 1995) (holding that an EA did not need to assess the effects of correcting an error in the applicable forest plan because "[t]he purpose of an EA is to provide information for determining whether prospective projects may have significant environmental impacts"); *Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 344 (9th Cir. 1996) (holding that the designation of a species as "threatened" did not require preparation of a supplemental EIS where the environmental impacts of timber sales on the species had already been addressed, because a change in the "legal status" of the species did not alter its "biological status" and "did not constitute new information that would show that the timber harvests and sales were likely to 'affec[t] the quality of the . . . environment' in a significant manner" (quoting *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 374 (1989) (alterations in original))).[4]

CFV's response to these cases is that the restrictions imposed by the revised Forest Plan—and likely known at the time of the projects' EAs—would have prohibited some of the alternatives considered in the EAs, and thus rendered the range of alternatives in the EAs incomplete. But nothing in the expected revisions changed the effect that the *projects* would have upon the environment, NEPA's only focus. And just as an expected loosening of regulations does not require

---

[4]Regarding the supplementation (as opposed to the revision) of the EAs, *cf.* 40 C.F.R. § 1502.9(c): "Agencies: (1) Shall prepare supplements to either draft or final environmental impact statements if: (i) The agency makes substantial changes in the proposed action that are relevant to environmental concerns; or (ii) There are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts." CFV does not point to any changes "in the proposed action," or new "circumstances or information relevant to *environmental concerns*" (emphasis added).

the Forest Service to address alternatives that might become compliant, an expected tightening of regulations does not limit the alternatives that the Forest Service may consider.

Because the agency's alleged knowledge of the policy changes imposed by the impending Forest Plan revision did not implicate the environmental impacts of the Flatwoods or George Creek projects, we affirm the district court's grant of summary judgment to the Forest Service on CFV's NEPA claims.

III

For these reasons, we reverse the district court's summary judgment on CFV's NFMA claims and find arbitrary and capricious the Forest Service's conclusion that 16 U.S.C. § 1604(i) does not require the Forest Service to make existing projects consistent with a revised Forest Plan. We affirm the district court's summary judgment to the Forest Service on CFV's NEPA claims.