*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0020p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ABASS BANGURA; ISATU BANGURA; ABASS
BANGURA, JR., and ABUBAKAR BANGURA,
                                  *Plaintiffs-Appellants,*

      *v.*

MARK HANSEN, District Director, United States
Department of Homeland Security; TODD SMITH,
United States Deportation Officer, United States
Department of Homeland Security; THOMAS RIDGE,
Secretary, United States Department of Homeland
Security,

                                  *Defendants-Appellees.*

No. 04-3531

---

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 03-00241—Edmund A. Sargus, Jr., District Judge.

Argued: September 15, 2005

Decided and Filed: January 18, 2006

Before: CLAY and GIBBONS, Circuit Judges; STEEH, District Judge.[*]

---

## COUNSEL

**ARGUED:** E. Dennis Muchnicki, Dublin, Ohio, for Appellants. Andrew M. Malek, UNITED STATES ATTORNEY, Columbus, Ohio, for Appellees. **ON BRIEF:** E. Dennis Muchnicki, Dublin, Ohio, for Appellants. Christopher R. Yates, UNITED STATES ATTORNEY, Columbus, Ohio, for Appellees.

---

[*] The Honorable George Caram Steeh, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

---

**OPINION**

---

CLAY, Circuit Judge.  Plaintiffs Abass and Isatu Bangura appeal an order of the United States District Court for the Southern District of Ohio dismissing their complaint against Defendants Mark Hansen, the District Director of the Department of Homeland Security, Bureau of Citizenship and Immigration Services, Deportation Officer Todd Smith, and then-Secretary of the Department of Homeland Security Thomas Ridge for failure to exhaust administrative remedies and failure to state a claim.  Plaintiffs allege that Defendants' denial of Plaintiff Abass Bangura's spousal immigration petition, as well as Defendants' denial of Don Chisley's spousal immigration petition made on behalf of Plaintiff Isatu Bangura, violate the Due Process Clause of the Fourteenth Amendment and were contrary to the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101, *et seq.*,  in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.  For the reasons set forth below, we **AFFIRM** the district court's dismissal of Plaintiffs' claims.

**I.**
**BACKGROUND**

**A.      Procedural History**

Plaintiffs Abass and Isatu Bangura filed the instant lawsuit on March 19, 2003, claiming violations of the INA, the APA, and the Due Process Clause of the Fourteenth Amendment in connection with Defendants' denial of Abass Bangura's spousal immigration petition made on behalf of his wife, Isatu Bangura.  On May 20, 2003, Defendants moved to dismiss Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, or in the alternative, under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.  The district court issued an opinion and order on March 22, 2004, granting Defendants' motion to dismiss.  Plaintiffs filed a timely notice of appeal with this Court on April 19, 2004.

**B.      Substantive Facts**

The Banguras have been married for six years. They have two children and are expecting a third. This marriage, however, is Mrs. Bangura's third marriage.  Prior to marrying Mr. Bangura, Mrs. Bangura was married to Ibrahim Sesay, a citizen of Sierra Leone, and Don Chisley, an American citizen.  Mrs. Bangura met her first husband, Ibrahim Sesay, while visiting the United States on a sixth month tourist visa in 1991.  Her marriage to Sesay was apparently brief, and on March 30, 1993, she married Chisley.

Two months after Chisley and Mrs. Bangura married, Chisley filed an I-130 spousal immigration petition with the Immigration and Naturalization Service ("INS"), seeking to classify Mrs. Bangura as the spouse of a United States citizen.   Chisley's I-130 petition stated that Mrs. Bangura and Sesay were divorced on July 12, 1991. The INS requested a copy of the divorce decree from Mrs. Bangura's marriage to Sesay, and Chisley provided a document entitled "Certificate of Final Divorce" from the National Mosque of Freetown in Sierra Leone.  After being informed  by the American Embassy in Sierra Leone that the National Mosque of Freetown did not exist and that all divorce decrees are in English and Arabic, the INS determined that the divorce decree was fraudulent.  Furthermore, a check with Chisley's employers established that Chisley had informed them he was single and provided  them with a different address for himself than the one he had given to the INS as his marital address.  Accordingly, on February 6, 1998, the INS concluded, "from the foregoing and from the lack of joint personal properties, liquid assets, and liabilities that your

marriage to the beneficiary is merely a poorly rehearsed attempt to evade the immigration laws for the purpose of obtaining benefits." INS Priv. Ltr. Rul. A72-725-743 (Feb. 6, 1998).

The INS gave Chisley 90 days to submit additional evidence; however, Chisley did not respond. On April 22, 1998, Mrs. Bangura sent a letter to the INS requesting that Chisley's I-130 application be withdrawn because she and Chisley had separated. Mrs. Bangura now claims that she ended her marriage to Chisley after learning that he fathered a child out of wedlock and concealed it from her. The INS issued a final denial of Chisley's petition on June 12, 1998, without responding to Mrs. Bangura's request. The INS sent a letter to Mrs. Bangura on October 20, 1998, informing her of the formal denial of Chisley's petition but without indicating the reason for the denial.

Mrs. Bangura and Chisley were divorced in Maryland on February 1, 1999. Subsequently, on February 23, 1999, Mrs. Bangura married Mr. Bangura, who is a naturalized United States citizen. Mr. Bangura filed an I-130 spousal immigration petition on behalf of Mrs. Bangura on May 11, 1999. The INS denied Mr. Bangura's petition on July 5, 2001, citing the earlier fraud finding from Chisley's petition: "The record is clear that the beneficiary had entered into a prior marriage for the purpose of evading the immigration laws. Accordingly, the petition you filed cannot be approved, as the beneficiary **is statutorily ineligible** for the benefit sought." INS Priv. Ltr. Rul. A72-725-743 (July 5, 2001) (emphasis in original). Mr. Bangura filed an administrative appeal from this decision, which is apparently still pending.

In addition to filing an administrative appeal of the denial of Mr. Bangura's spousal immigration petition, Plaintiffs filed the instant lawsuit in the district court. They contend that their rights were violated when Ohio district director of the Department of Homeland Security, Mark Hansen, used the 1998 fraud finding to deny Mr. Bangura's petition. Plaintiffs argue that the administrative rules prohibit them from appealing the 1998 decision to the Board of Immigration Appeals ("BIA"), and thus, collateral use of the 1998 fraud finding deprives them of procedural due process, interferes with their marriage in violation of substantive due process, and is contrary to the INA in violation of the APA. Plaintiffs also claim that the 1998 fraud finding was not supported by substantial evidence.

Defendants moved to dismiss Plaintiffs' complaint on the ground that the district court lacked subject matter jurisdiction because Mr. Bangura has failed to exhaust administrative remedies on his I-130 petition, and on the ground that the complaint failed to state a claim for relief. Thereafter, the district court dismissed Plaintiffs' procedural due process claim holding that although Plaintiffs' failure to exhaust administrative remedies on the INS' denial of his I-130 petition did not deprive the court of subject matter jurisdiction, it nonetheless rendered the exercise of its own jurisdiction inappropriate for reasons of judicial economy. Additionally, the district court rejected Plaintiffs' substantive due process claim based on the fundamental right to marriage on the ground that Plaintiff failed to state a claim. According to the district court, the issue is not whether Mrs. Bangura has a right to marry, but rather, whether she has a right to be granted legal residency through her marriage to Mr. Bangura. Plaintiffs now appeal the district court's ruling.

## II.
## DISCUSSION

**A.      Plaintiffs' Constitutional Claims**

###      1.      Standard of Review

This Court reviews a district court's order dismissing a claim for lack of jurisdiction or failure to state a claim *de novo*. *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002); *Haio v. INS*, 199 F.3d 302, 304 (6th Cir. 1999).

###      2.      Analysis

####           a.      Jurisdiction[1]

The Plaintiffs' failure to exhaust their administrative remedies does not deprive this Court or the district court of subject matter jurisdiction, and the district court abused its discretion in dismissing Plaintiffs' constitutional claims for failure to exhaust their administrative remedies in the name of judicial economy.  Where a statute requires a plaintiff to exhaust his or her administrative remedies before seeking judicial review, federal courts do not have subject matter jurisdiction to review the plaintiff's claim until the plaintiff has exhausted his or her administrative remedies. *Perkovic v. INS*, 33 F.3d 615, 619 (6th Cir. 1994) (stating that while exhaustion is prudential in most cases, it is jurisdictional where Congress has placed it in the statute granting federal courts jurisdiction).   "However, the Supreme Court has long held that . . . the exhaustion requirement is far from absolute.  Of paramount importance to any exhaustion inquiry is congressional intent. . . . [W]here Congress has not clearly required exhaustion, sound judicial discretion governs." *Dixie Fuel Co. v. Comm'r of Social Security*, 171 F.3d 1052, 1058-59 (6th Cir. 1999) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)).  Exhaustion of administrative remedies may not be required in cases of non-frivolous constitutional challenges to an agency's procedures. *S. Ohio Coal Co. v. Office of Surface, Mining, Reclamation and Enforcement,* 20 F.3d 1418, 1425 (6th Cir. 1994).  In the immigration context, several circuits have indicated that "constitutional challenges to the INA and INS procedures and some due process claims do not require exhaustion because the BIA does not have the power to adjudicate these claims." *Sundar v. INS*, 328 F.3d 1320, 1325 (11th Cir. 2003) (citing *Bernal-Vallejo v. INS*, 195 F.3d 56, 64 (1st Cir. 1999); *Akinwunmi v. INS,* 194 F.3d 1340, 1341 (10th Cir. 1999); *Mojsilovic v. INS*, 156 F.3d 743, 748 (7th Cir. 1998); *Rashtabadi v. INS*, 23 F.3d 1562, 1567 (9th Cir. 1994)).

In this case, the district court erred in holding that Plaintiffs were required to exhaust their administrative remedies before filing in federal court.  It is undisputed that no statute or administrative rule required Plaintiffs to exhaust their administrative remedies. *See* 8 § C.F.R. 103.3(a)(ii) (providing that a petitioner "may" appeal to the BIA); *Hoang v. Comfort*, 282 F.3d 1247, 1254 (10th Cir. 2002), *abrogated on other grounds*, *Demore v. Kim*, 538 U.S. 510 (2003) (noting that the INA only requires plaintiffs to exhaust administrative remedies in removal proceedings).  Thus, whether Plaintiffs should be required to exhaust their administrative remedies is a matter of sound judicial discretion. *See Dixie Fuel Co.*, 171 F.3d at 1058-59.  Here, requiring Plaintiffs to

---

[1]We address exhaustion under jurisdiction because Defendants argue that Plaintiffs' failure to exhaust administrative remedies deprives this Court of subject matter jurisdiction.  Thus, this Court must address whether failure to exhaust deprives this Court of jurisdiction as a threshold matter. *Steel Co. v. Citizens For a Better Env't*, 523 U.S. 83, 94-95 (1998) (citing *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884)) ("The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of judicial power of the United States' and is 'inflexible and without exception.'").  We note, however, that exhaustion is primarily a prudential doctrine and failure to exhaust only deprives this Court of subject matter jurisdiction when exhaustion is required by a jurisdictional statute. *Perkovic v. INS*, 33 F.3d 615, 619 (6th Cir. 1994).

exhaust their administrative remedies does not serve the interests of judicial economy. Although the BIA undoubtedly could grant Plaintiffs some relief and possibly render Plaintiffs' procedural due process claim moot, it does not have the authority to adjudicate Plaintiffs' substantive due process claim. *Akninwumni*, 194 F.3d at 1341. Moreover, as discussed *infra* at Section II, this Court must address the merits of one of Plaintiffs' APA claims. It does not serve the interests of judicial economy to dismiss Plaintiffs' claims for failure to exhaust when the federal courts must nonetheless hear other claims that are integrally related to the dismissed claims. Therefore, the district court abused its discretion in dismissing Plaintiffs' procedural due process claim for failure to exhaust administrative remedies.

### b.     Failure to State a Claim

### i.     Substantive Due Process

The district court correctly held that Plaintiffs failed to state a claim for relief based on substantive due process. Generally, a plaintiff adequately alleges a substantive due process claim where the plaintiff pleads that a statute or government action burdens a fundamental right and cannot withstand strict scrutiny. *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1064 (6th Cir. 1998):. *Montgomery v. Carr*, 101 F.3d 1117, 1124 (6th Cir. 1996) (holding that government actions interfering with marriage are subject to strict scrutiny).      In immigration cases, however, federal courts apply a much more deferential standard of review to substantive due process challenges even where the immigration law interferes with a plaintiff's fundamental rights. *Fiallo v. Bell*, 430 U.S. 787, 798-99 (1977). This Court upholds immigration statutes so long as they are "conceivably related to the achievement of a federal interest." *Almario v. Att'y General*, 872 F.2d 147, 152 (6th Cir. 1989) (denying equal protection claim that involved the "fundamental right" to marry); *see also Anetekhai v. INS*, 876 F.2d 1218,1222 (5th Cir. 1989) (applying "minimum scrutiny" to a substantive due process claim that involved the right to marry); *Barmo v. Reno* 899 F. Supp. 1375, 1381 (E.D. Pa. 1995) (holding a statute need only be "supported by facially legitimate and *bona fide* reason" where it burdened the right to marry). This standard may be even lower than rational basis review. *Fiallo,* 430 U.S. at 798-99 (1977). In *Fiallo,* the Supreme Court stated,

> Appellants suggest that the distinction drawn in s [sic] 101(b)(1)(D) is unconstitutional under any standard of review since it infringes upon the constitutional rights of citizens and legal permanent residents without furthering any legitimate governmental interest . . . . Those are admittedly the consequences of the congressional decision not to accord preferential status to this particular class of aliens, but the decision nonetheless remains one solely for the responsibility of Congress and wholly outside the power of this Court to control. . . . [I]t is not the judicial role in cases of this sort to probe and test the justifications for the legislative decision.

*Id.* (internal citations omitted). *But see Azizi v. Thornburgh*, 908 F.2d 1130, 1133 n.2 (2d Cir. 1990) (stating that the facially legitimate and *bona fide* reason test is the same as the rational basis test).

The limited role of courts in reviewing the substantive policy embodied in immigration statutes derives from the Constitution's grant of plenary power to exclude aliens to Congress. *See, e.g., Landon v. Plasencia,* 459 U.S. 21, 32 (1982) (noting that an alien's initial admission into the United States is a privilege and wholly within the sovereign's power to exclude aliens); *Fiallo*, 430 U.S. at 792; *Galvan v. Press*, 347 U.S. 522, 529, 531-32 (1954) (holding that while aliens may receive procedural due process, the court's ability to review the substantive policy of immigration statutes is limited to review for rationality). The Supreme Court has "long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control. . . . [T]he power over aliens is of a political

character and therefore subject to only narrow judicial review." *Fiallo*, 430 U.S. at 792 (citations omitted).

In this case, the statute in question, 8 U.S.C. § 1154(c), easily withstands this deferential standard of review. Section 1154(c) denies aliens immediate relative visas when they marry American citizens for the purpose of obtaining U.S. residence. 8 U.S.C. § 1154(c). Congress presumably enacted § 1154(c) to prevent immigration fraud, which is a legitimate federal interest. Thus, § 1154(c) is "conceivably related to a federal interest," and this Court must uphold its constitutionality even assuming Plaintiffs have established that it interferes with their fundamental right to marry. *See Almario*, 872 F.2d at 152.

### ii.        **Procedural Due Process**

Similarly, Plaintiffs failed to a state a procedural due process claim because Plaintiffs failed to properly allege a liberty or property interest. The Fourteenth Amendment prohibits the government from depriving persons of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Due Process Clause protects aliens physically present in the United States as well as citizens. *Landon,* 459 U.S. at 32-33 ; *Mathews v. Diaz*, 426 U.S. 67, 77 (1976). Due process rights only attach, however, once a plaintiff asserts a liberty or property interest. *See also Almario*, 872 F.2d at 151. To establish a liberty or property interest, the plaintiff must demonstrate that the Constitution or a federal or state statute grants him a protected right**.** *See Almario*, 872 F.2d at 151.

In this case, Plaintiffs assert that the Constitution grants them a liberty interest in their marriage, and thus, that the government must give them due process before denying Mrs. Bangura a visa. While this Court recognizes that the Banguras have a fundamental right to marry, it does not agree with Plaintiffs' characterization of the nature of the government's infringement. A denial of an immediate relative visa does not infringe upon their right to marry. As this Court stated in *Almario*, "[t]he Constitution does not recognize the right of a citizen spouse to have his or her alien spouse remain in the country." *Almario*, 872 F.2d at 151.

Plaintiffs' procedural due process claim in this case is indistinguishable from the claim that this Court rejected in *Almario.* In *Almario*, this Court addressed a challenge to 8 U.S.C. § 1154(h), which requires an alien who marries an American citizen while in deportation proceedings to live outside the United States for two years before the alien's spouse is permitted to apply for an immediate relative visa. *Id.* The plaintiffs in *Almario* argued that 8 U.S.C. § 1154(h) infringed upon their procedural due process rights because it presumed that their marriage was fraudulent without giving them the opportunity to prove otherwise. *Id.* This Court rejected the plaintiffs' argument stating that "[t]he Constitution does not recognize the right of a citizen spouse to have his or her alien spouse remain in the country." *Id.*

While *Almario* rejected a procedural due process claim predicated on the right to marry, it did not address whether 8 U.S.C. §§ 1151 and 1154 create a property interest protected by the Due Process Clause. The issue of whether §§ 1151 and 1154 creates a protected interest in an immediate relative visa, however, is not before this Court. Plaintiffs' complaint does not clearly allege that the INA creates a protected interest. Similarly, neither Plaintiffs' answer to Defendants' motion to dismiss nor any of their briefs on appeal argue that the INA creates a protected interest. Plaintiffs attempt to raise the issue during oral arguments is insufficient to present it for appellate review. *See* Fed. R. App. Pro. 28(a)(5) (requiring appellants to raise all issues in their briefs);

*Bickel v. Korean Air Lines Co.*, 96 F.3d 151, 153 (6th Cir. 1996). Thus, this Court need not decide the issue.[2]

**B.      Plaintiffs' APA Claims**

The district court held that Plaintiffs waived their APA claims. Because we find that the Plaintiffs did not waive their APA claims, we address issues not discussed by the district court, namely, Defendants' contentions that: (1) this court lacks subject matter jurisdiction because Plaintiffs failed to exhaust their administrative remedies; (2) Plaintiffs lack standing to bring their APA claims; and (3) Plaintiffs fail to state a claim under the APA. Because we find that Mr. Bangura does not have standing to challenge the denial of Chisley's petition, that neither Plaintiff states a claim for relief based on the denial of Mr. Bangura's petition, and that Mrs. Bangura loses on the merits of her challenge to Chisley's petition, we affirm the district court's dismissal of Plaintiffs' APA claims.

**1.      Standard of Review**

This Court reviews a district court's dismissal for failure to prosecute under the abuse of discretion standard. *Carver v. Bunch*, 946 F.2d 451, 452 (6th Cir. 1991). We review all other issues *de novo* because the district court did not reach them.

**2.      Analysis**

**a.      Waiver or Failure to Prosecute**

The district court abused its discretion in holding that Plaintiffs waived their APA claims. In a footnote in its opinion, the district court disposed of all of Plaintiffs' APA claims. The district reasoned that Plaintiffs waived the APA claims by failing to address them in Plaintiffs' response to defendant's motion to dismiss. In *Carver v. Bunch*, this Court held that a district court abused its discretion in dismissing a plaintiff's claims solely because the plaintiff failed to respond to the defendant's motion to dismiss for failure to state a claim. 946 F.2d at 452. It reasoned that such a dismissal was akin to a dismissal for failure to prosecute, and thus, governed by the standard set forth in Rule 41 of the Federal Rules of Civil Procedure. *Id.* It then determined that in order for a district court to dismiss a plaintiff's claims in response to a 12(b)(6) motion, the district court must "conclude 'beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief,'" regardless of whether the plaintiff responded. *Id.* (quoting *Haines v. Kerner*, 404 U.S. 519 (1972)). Analogizing to a summary judgment motion, the court also noted that the Federal Rules of Civil Procedure place the burden on the moving party to demonstrate that the plaintiff failed to state a claim for relief. *Id.* at 454-55. In this case, the district court failed to address whether Plaintiff's complaint stated a claim for relief under the APA and dismissed the APA claims solely because Plaintiffs failed to respond to Defendant's motion. Thus, the district court's dismissal rested on impermissible grounds.

---

[2] There is a decent amount of support for the proposition that §1154(b) creates an interest to which procedural due process rights attach. Supreme Court precedent makes clear that non-discretionary statutes create property interests for the purpose of procedural due process. *Town of Castle Rock v. Gonzales*, 125 S. Ct. 2796, 2803 (2005) (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1997)). Section 1154(b) states that the Attorney General, "*shall . . . approve the petition* [for immediate relative visa]." 8 U.S.C. § 1154(b) (emphasis added). The D.C. circuit explicitly held that this language created a right protected by procedural due process. *Escobar v. INS*, 896 F.2d 564 (D.C. Cir. 1990). Additionally, Fifth Circuit dicta implied that it would uphold a due process claim under § 1154(b). *Anetekhai v. INS*, 876 F.2d 1218, 1223 (5th Cir. 1989). In rejecting a substantive due process challenge to §1154(h), the section at issue in *Almario*, the court stated, "[c]ertainly, if Congress had conditioned an alien's eligibility for a status adjustment on the existence of a bona fide marriage, procedural due process would require that the couple be given an opportunity to establish that fact before an adjustment could be denied." *Id.* If this right exists, however, it clearly belongs to the citizen spouse and not the alien spouse. *Wright v. INS,* 379 F.2d 275, 276 (6th Cir. 1967) (holding that an alien spouse has no protected interest in an I-130 petition).

Moreover, the factual basis underlying the district court's determination that Plaintiffs waived their APA claims is clearly erroneous. The district court states that Plaintiffs "fail to even mention [their APA claims] in their Memorandum." (Op. & Or. Granting Mot. to Dismiss, March 23, 2003.) In fact, half of Plaintiffs' memorandum in response to Defendants' motion to dismiss is devoted to their APA claims and rebutting Defendants' contention that Plaintiffs do not have standing to seek judicial review for their APA claims.

Finally, the district court erroneously placed the burden on Plaintiffs to demonstrate that they stated a claim for relief. As noted above, this Court has determined that on a 12(b)(6) motion, the moving party bears the burden of demonstrating that the plaintiff failed to state a claim. *Carver*, 946 F.2d at 455. In this case, Defendants did not argue in their memorandum in support of their motion to dismiss that Plaintiffs failed to state a claim for relief under the APA. Instead, Defendants argued that the court lacked subject matter jurisdiction to hear any of Plaintiffs' claims and that Plaintiffs failed to state a substantive or procedural due process claim. Because Defendants did not offer a single argument to support their assertion that Plaintiffs failed to state a claim for relief under the APA, Defendants failed to meet their burden of proof, and the district court should have dismissed Defendants' motion.**3**

### b.          Failure to Exhaust Administrative Remdies

Plaintiffs' failure to exhaust their administrative remedies does not deprive this court of subject matter jurisdiction over Plaintiffs' APA claims. The law governing the exhaustion of APA claims differs from that governing exhaustion in other contexts. It is governed by 5 U.S.C. § 704; *Darby v. Cisneros*, 509 U.S. 137, 146-47 (1993). Section 704 only requires a plaintiff to exhaust his or her administrative remedies where a statute or agency rule makes the remedies mandatory. *Id.*; *see also Dixie Fuel Co.*, 171 F.3d at1059. Where an intra-agency appeal is optional, however, the APA does not require a plaintiff to appeal prior to filing suit in federal court. *Darby*, 509 U.S. at 147 ("Section [704] explicitly requires exhaustion of all intra-agency appeals mandated either by statute or by agency rule; it would be inconsistent with the plain language of § [704] for courts to require litigants to exhaust optional appeals as well.")

In this case, it is undisputed that the INA and its implementing regulations do not require Plaintiffs to exhaust their administrative remedies before seeking review in federal court. 8 C.F.R. § 103.3(a)(ii) (providing that a party "may" appeal to the BIA). This is because Plaintiffs do not appeal an order of removal but the denial of spousal immigration petition. In contrast to orders of removal, the INA does not require aliens to appeal denials of spousal immigration petitions to the BIA before seeking relief in federal court. *Compare id. with* 8 U.S.C. § 1252(d)(1) (requiring aliens to appeal to BIA before appealing an order of removal in federal court). Therefore, this Court does not have the authority to require Plaintiffs to appeal to the BIA before bringing their claims under the APA in federal court.

---

**3**Nonetheless, this Court can address Plaintiffs' failure to state a claim because this Court may uphold a district court's order on any ground supported by the record. *City Mgmt. Corp. v. U.S. Chemical Corp.*, 43 F.3d 244, 251 (6th Cir. 1994).

### c.    Standing

Section 10 of the APA grants all parties "adversely affected or aggrieved" by a final agency action prudential standing to bring suit in federal court.[4] 5 U.S.C. § 702.   A person is "adversely affected or aggrieved" within the meaning of the APA if his or her claim meets the "zone of interest" test. *Nat'l Credit Union Admin. v. First Nat'l Bank*, 522 U.S. 479, 487-90 (1998) (emphasis in original) (holding that the APA incorporates the "zone of interest" test); *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 19-20 (1998) (holding that Congress waives all prudential limitations on standing except for "the zone of interest" test when it grants "aggrieved" parties the right to sue). To meet the requirements of the "zone of interest test," a plaintiff must establish that the interest he or she seeks to protect, "is *arguably* within the zone of interests to be protected [] by the statute" under which the plaintiff sues. *Nat'l Credit Union Admin.*, 522 U.S. at 492.  The Supreme Court has repeatedly emphasized that the "zone of interest" test does not require a plaintiff to establish that Congress specifically intended to benefit the plaintiff. *Id.; see also Clarke v. Security Indus. Ass'n,* 479 U.S. 388, 399-400 (1987) ("'[the] zone of interest' test is a guide for deciding whether, in view of Congress' evident intent to make agency action presumptively reviewable, a particular plaintiff should be heard to complain of a particular agency decision.  In cases where the plaintiff is not itself the subject of the contested regulatory action, the test denies a right of review if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit. The test is not meant to be especially demanding; in particular, there need be no indication of congressional purpose to benefit the would-be plaintiff.*"); Courtney v. Smith*, 297 F.3d 455, 461 (6th Cir. 2002).  Rather, the "zone of interest" test entails a two part inquiry.  First, the court must determine what interests the statute *arguably* was intended to protect, and second, the court must determine whether the "plaintiff's interests affected by the agency action in question are among them." *Nat'l Credit Union Admin.*, 522 U.S. at 492; *see also Courtney*, 297 F.3d at 461.

In this case, both Plaintiffs' interests fall within the 8 U.S.C. §§ 1151(a)'s and 1154(a)'s "zone[s] of interest," and thus, both Plaintiffs have prudential standing to sue under the APA. Congress enacted the immediate relative visa as a part of the Immigration Reform Act of 1965. S. Rep. No. 748 (1965), *as reprinted in* 1965 U.S.C.C.A.N. 3328, 3341.  The Immigration Reform Act of 1965 replaced a quota system based on national origin with a system based on preferences to relatives of U.S. citizens and aliens legally residing in the United States. *Id.* at 3329.  The new system  aims to prevent family members from being separated. *Id.* at  3332.  "Reunification of families is to be the foremost consideration . . . .  In order that the family unit can be preserved as much as possible, parents of adult U.S. citizens, as well as spouses and children, may enter the country without numerical limitation." *Id.*  Because the interest both Plaintiffs seek to protect – the preservation of their family unit – is the primary interest the INA's immediate relative visa provisions were designed to protect, both Plaintiffs' interests fall within the 8 U.S.C. § 1151(a)'s and 1154(a)'s zone of interest.

Although Mrs. Bangura, as an alien, probably cannot claim that Congress intended to specifically benefit her by enacting 8 U.S.C. §§ 1151 and 1154, whether Congress intended to benefit aliens is not relevant to this court's inquiry.  *See Nat'l Credit Union Admin.*, 522 U.S. at 492.  The relevant inquiry is whether Congress intended to insure that spouses of American citizens could live in the United States with their families. *See id.*  Thus, the fact that Mrs. Bangura is an alien does not deprive her of the right to sue under the APA. *Ghaly v. INS*, 48 F.3d 1426,1434 n.6

---

[4]The government's argument that only the citizen spouse has "standing" to appeal to the BIA under the INA is irrelevant to Plaintiffs' standing to sue in federal district court under the APA. *Ghaly v. INS*, 48 F.3d 1426, 1434 n.6 (7th Cir. 1995).  The cases the government cites discuss the authority of the BIA to hear an appeal from a non-citizen. *Id.; In re Sano*, 19 I.&N. Dec. 299 (BIA 1985). They do not address the authority of a federal court to hear claims. *Ghaly*, 48 F.3d  at 1434 n.6.  Instead, the issue of standing under the APA is governed by an extensive body of Supreme Court case law.  *See infra*; *Ghaly*, 48 F.3d at 1434 n.6.

(7th Cir. 1995) (holding that immigrant beneficiary of an employer's visa application fell within the visa statute's "zone of interest," and thus, had standing to challenge the visa's revocation under the APA); *Taneja v. Smith*, 795 F.2d 355, 358 n.7 (4th Cir. 1986) (same).

Nonetheless, while both Plaintiffs are "adversely affected" within the meaning of the APA, Mr. Bangura does not have constitutional standing to challenge the INS's denial of Chisley's petition. Article III standing requires that a plaintiff suffer injury-in-fact that is fairly traceable to the defendant's illegal conduct and redresssable by the requested relief. *Allen v. Wright*, 468 U.S. 737, 750 (1984). Mr. Bangura does not allege any injury-in-fact that is fairly traceable to the INS's denial of Chisley's petition. *See id.* The denial did not deprive Mr. Bangura of any legal right. Additionally, it did not result in the loss of his wife's company because denial of Chisley's petition did not result in the deportation of Mrs. Bangura. Finally, it did not cause the denial of Mr. Bangura's petition. It was not the actual denial of Chisley's petition that prejudiced Mr. Bangura's petition but the alleged collateral use of that decision in the DHS' denial of Mr. Bangura's own petition. This collateral use is properly characterized as a part of DHS's denial of Mr. Bangura's petition and not the INS's denial of Chisley's petition. Furthermore, to the extent Mr. Bangura alleges injury-in-fact through the collateral use of the INS's denial of Chisley's petition, it is not redressable through a challenge to Chisley's petition. To grant relief with respect to the alleged collateral use of the 1998 fraud finding, this Court would have to reverse the DHS's denial of Mr. Bangura's petition. Thus, we find that Mr. Bangura does not have constitutional standing to challenge the denial of the INS's denial of Chisley's petition.

### d.      Failure to State a Claim

To state a claim for relief under the APA, a plaintiff must allege that his or her injury stems from a final agency action for which there is no other adequate remedy in court. 5 U.S.C. § 704; *Gillis v. U.S. Dep't of Health and Human Servs.*, 759 F.2d 565, 575 (6th Cir. 1985.) Because the INS's denial of Chisley's petition is a final agency action, for which there is no other adequate remedy in court, Mrs. Bangura states a claim for relief under the APA. Neither Plaintiff, however, can challenge the DHS's denial of Mr. Bangura's petition under the APA because Mr. Bangura's pending appeal renders the decision non-final.

### i.      Finality

An action is final where it: (1) marks the "consummation of the agency's decision-making process;" and (2) determines rights and obligations or occasions legal consequences. *Bennett v. Spear,* 520 U.S. 154, 177-78 (1997); *Airbrake Sys., Inc. v. Mineta*, 357 F.3d 632, 639 (6th Cir. 2004). Additionally, the APA defines final action to include:

> agency action otherwise final . . . whether or not there has been presented or determined an application for . . . any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

5 U.S.C. § 704. The Supreme Court has noted in *dicta*, however, that this "language has long been construed by this and other courts merely to relieve parties from the *requirement* of petitioning for a rehearing before seeking judicial review . . . but not to prevent petitions for reconsideration that are actually filed from rendering the orders under reconsideration non final." *Interstate Com. Comm'n v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 284-85 (1987).

In this case, Plaintiffs allege three purported final agency actions: (1) the INS's denial of Chisley's petition; (2) the DHS's denial of Mr. Bangura's petition; and (3) the 1998 fraud finding. Only the INS's denial of Chisley's petition is a final agency action under the APA. The INS's denial of Chisley's petition is final because it marked the consummation of the INS's decision-making

process with regard to Chisley's visa petition, and it determined the right of Chisley to a spousal visa for Mrs. Bangura.  *See Bennett*, 520 U.S. at 177-78.

Although the same reasoning applied to the DHS's initial denial of Mr. Bangura's petition, Mr. Bangura's decision to take his optional appeal rendered the earlier decision non-final.  *Bhd. of Locomotive Eng'rs*, 482 U.S. at 284.  While the language of the APA quoted above admittedly seems to require a different outcome – "whether or not there has been presented . . . an application for . . . any form of reconsideration" – the Supreme Court and D.C. Circuit have determined that it does not.  *Id.*; *Outland v. Civil Aeronautics Bd.*, 284 F.2d 224, 227 (D.C. Cir. 1960).  Thus, this Court defers to their interpretation of § 704.

In contrast, the 1998 fraud finding was never a final decision.  It did not mark the consummation of the INS's decision-making process.  *See Bennett*, 520 U.S. at 177-78.  Once the INS determined that Chisley's marriage was fraudulent, the INS was still required to determine the legal consequences of its factual finding under the INA.  The application of the law to the factual findings resulted in a final action:  the INS's denial of Chisley's petition.

### ii.          No Other Adequate Remedy

Finally, Mrs. Bangura has no other adequate remedy to challenge the INS's denial of Chisley's petition.  Section 704's requirement that there be no other "adequate remedy in court" insures that the APA's general grant of jurisdiction to review agency decisions is not duplicative of more specific statutory procedures for judicial review.  *See Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) (noting that provisions providing for appeal directly to federal courts of appeal or panels of district court judges could not be avoided by suing under the APA). The essential inquiry is whether another statutory scheme of judicial review exists so as to preclude review under the more general provisions of the APA.  *Id.*   This inquiry differs from the exhaustion inquiry in that the focus of this inquiry is not on available administrative remedies, but on available federal court remedies.  *Compare Bowen*, 487 U.S. at 903 (discussing § 704's requirement that there be no other "adequate remedy in court" ) *with Darby,* 509 U.S. at 145-46 (discussing § 704's exhaustion requirement).  As the INA does not specifically provide for federal court review of denials of visa petitions, there is no other adequate remedy in court that would preclude APA review.  *See generally*, 8 U.S.C. §§ 1151-1378 (not providing for appeals to district courts from denials of immediate relative visa petitions); 8 C.F.R. §§ 1-499 (same).  Thus, Mrs. Bangura states a claim under the APA based on the INS's denial of Chisley's petition, and the district court correctly dismissed all other APA claims.

### e.          Merits of Plaintiffs' APA Claims

As discussed above, Plaintiffs' can only state a claim for relief based upon the INS's denial of Chisley's petition, and only Mrs. Bangura has constitutional standing to challenge that decision.  Thus, this Court only needs to address the merits of Mrs. Bangura's challenge to the INS's denial of Chisley's petition.  Because we find that the INS did not violate the APA or the INA in denying Chisley's petition, we affirm the district court's dismissal of Mrs. Bangura's APA claim.

### i.          Standard of Review under the APA

The APA directs courts to review agency actions under a deferential standard.  *Carabell v. U.S. Army Corp. of Eng'rs,* 391 F.3d 704, 707 (6th Cir. 2004); *N.E. Ohio Reg. Sewer Dist. v. Env't Prot. Agency,* 411 F.3d 726, 731 (6th Cir. 2003).   A court may not set aside or hold unlawful an agency action unless that action is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law.  5 U.S.C.§ 706(2)(A); *see also Carabell*, 391 F.3d at 707; *N.E. Ohio Reg. Sewer Dist.*, 411 F.3d at 731.   An agency decision is arbitrary and capricious if the agency fails to examine relevant evidence or articulate a satisfactory explanation for the decision. *Motor Vehicles*

*Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 42-43 (1983). The reviewing court "may not supply a reasoned basis for the agency's action that the agency itself has not given." *Id.* at 43. However, "[e]ven when an agency explains its decision with less than ideal clarity, a reviewing court will not upset the decision on that account if the agency's path may reasonably be discerned." *Alaska Dep't of Env't Conservation v. EPA*, 540 U.S. 461, 497 (2004).

### ii.        The INA And Its Implementing Regulations

In addition to arbitrary and capricious review, the APA authorizes courts to review agency actions for conformity with law. 5 U.S.C.§ 706(2)(A); *see also Carabell*, 391 F.3d at 707; *N.E. Ohio Reg. Sewer Dist.*, 411 F.3d at 731. In this case, the relevant law is contained in the INA and its implementing regulations, which govern petitions for immediate relative visas. In particular, the issues in this case revolve around the application of § 204(c) of the INA, which requires the Attorney General to deny a visa petition made on behalf of any alien whom the Attorney General determines "previously [] accorded or [] sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States . . . by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading immigration laws." 8 U.S.C. § 1154(c). Under the INA, a determination of marriage fraud made pursuant to § 204(c) must be supported by substantial and probative evidence. *In re Agninaoay,* 16 I.&N. Dec. 545, 546 (BIA 1978); *In re Tawfik*, 20 I.&N. Dec. 166, 167 (BIA 1990). Therefore, this Court must overturn any finding of marriage fraud not supported by substantial and probative evidence.

### iii.       The INS's Denial of Chisley's Petition Did Not Violate the APA or the INA

The INS did not violate the APA when it denied Chisley's petition for a spousal visa because the denial was not arbitrary and capricious and was supported by substantial evidence. The denial was not arbitrary and capricious because the INS supplied Chisley with a reasoned explanation. As the INS explained, the evidence indicated that Mrs. Bangura's marriage to Chisley was fraudulent, and thus, the INA required it to deny Chisley's petition. Furthermore, the INS's factual finding of fraud was supported by substantial and probative evidence. Mrs. Bangura's divorce decree from her first marriage appeared to be fraudulent. Next, Chisley and Mrs. Bangura were not living together. Additionally, Chisley and Mrs. Bangura did not own joint property. While Mrs. Bangura may offer a different explanation for these facts, an alternative explanation does not negate the reasonableness of the INS's finding of fraud. Finally, the Banguras point to no provision of the INA that the INS violated in denying Chisley's petition. Therefore, we find that Mrs. Bangura does not prevail on the merits of her APA claim and affirm the district court's dismissal.

### III.
### CONCLUSION

For the reasons set forth above, we **AFFIRM** the district court's dismissal of all of Plaintiffs' claims.