File Name: 06a0732n.06
Filed: October 4, 2006

**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

**No. 05-3895**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ELVIS SINOJMERI, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW OF A |
| | ) | DECISION OF THE BOARD OF |
| ALBERTO R. GONZALES, Attorney General | ) | IMMIGRATION APPEALS |
| of the United States, | ) | |
| | ) | |
| Respondent. | ) | |

Before: GUY, SUTTON, and ALARCÓN[*], Circuit Judges.

PER CURIAM. In this petition for review, Elvis Sinojmeri challenges the opinion of the

Board of Immigration Appeals ("BIA"). The BIA affirmed the decision of an immigration judge

("IJ") ordering his removal to Albania. It also affirmed the denial of Mr. Sinojmeri's applications

for asylum and withholding of removal, as well as his request for protection under the Convention

Against Torture ("CAT"). We dismiss that portion of Mr. Sinojmeri's application for asylum

because he failed to file his application for asylum within one year after the date he arrived in the

---

[*]The Honorable Arthur L. Alarcón, Senior Judge, United States Court of Appeals for the
Ninth Circuit, sitting by designation.

- 1 -

United States as required by 8 U.S.C. § 1158(a)(2)(B) and 8 U.S.C. § 1158(a)(3). We deny his petition for review of the rejection of his claim for withholding of removal because he failed to present compelling evidence that there is a clear probability that he will be subject to persecution if he is forced to return to Albania on account of his race, religion, nationality, membership in a particular social groups, or political opinion. We also reject his claim for protection under CAT because he failed to present any argument in support of this contention.

I

The facts presented by Mr. Sinojmeri at his evidentiary hearing are undisputed. He is a native and citizen of Albania. He was born in Gjirokastra, Albania on July 2, 1977. He moved to Tirania, Albania in 1999 because of economic hardships in his town. There, he obtained employment in a body shop with the help of an uncle.

In June of the year 2000, Mr. Sinojmeri was handed a letter by a teenager. The messenger informed him that it was from someone named "Al Capone." The letter stated that Mr. Sinojmeri would be killed unless he paid Al Capone $20,000. Because of the age of the person who handed him the threatening letter, Mr. Sinojmeri at first thought it was "a kid's play, kid's game."

Subsequently, after considering what was happening at the time in Albania including kidnaping, killings, and robberies, however, Mr. Sinojmeri reported the receipt of the letter to the police. At the police station, he was informed that it was probably a "kid's game," and they had

"more important questions to deal with." Mr. Sinojmeri turned over the threatening letter to the police so that they could "find some fingerprints in that paper or something like that."

After this incident, someone fired weapons outside of Mr. Sinojmeri's house. He also received anonymous telephone calls in which he was informed that "these shootings are for you, . . . if you don't get money, we're going to deal with you." Mr. Sinojmeri reported the fact that shots had been fired outside of his home and the receipt of the anonymous phone call to the police on June 16, 2000. He was told to return the following day to inform the police official who investigated criminal activities.

On June 17, 2000, Mr. Sinojmeri filed a police report. A police official commented that "now is the time that lots of people carry illegal weapons, they shoot sometimes, we're not sure if [it has] to do directly with you." The police official also noted that since there were no bullet holes in his house, it may be possible that the firing of the weapons "has nothing to do with you."

On June 18, 2000, Mr. Sinojmeri saw a very expensive car outside his building. He was aware that it was the type of luxury automobiles owned by "mafia bosses." As he climbed up the stairs, two men stopped him and asked what he had done about procuring the money. Mr. Sinojmeri told them that he had not had a chance to obtain $20,000, or to contact his parents, because of his wife's illness. The men told Mr. Sinojmeri they would show him how to find the money. They then sprayed something on his face which caused him to lose consciousness. When he awakened, he was

in a military bunker that had been constructed during the communist regime. Two women were also in the bunker. They appeared to have been beaten and sexually assaulted.

Subsequently, three armed men entered the bunker. They were wearing "a kind of military uniform." They asked him why he didn't bring the money. They then tortured him, tied him up, and poured water on him. A man entered the room who called himself "Al Capone" ("the commander"). He appeared to be the commander of his captors. Mr. Sinojmeri was untied by his captors and told to kneel before their commander. The commander asked Mr. Sinojmeri if he had ever seen or heard of him before. Mr. Sinojmeri replied that he had never seen the commander or heard of him. The commander then drew a knife and cut Mr. Sinojmeri on his chest so "you will remember me."

Mr. Sinojmeri's captors permitted him to telephone his father-in-law for his assistance in obtaining the $20,000 ransom. Mr. Sinojmeri remained in captivity for about two weeks while his father-in-law borrowed money to pay the ransom. During that time, his captors continued to harm him physically and psychologically. A red iron was used to burn his legs. His legs were also cut. Mr. Sinojmeri's father-in-law went to the police station to seek assistance in rescuing his son-in-law. He was told that they did not know who had kidnaped Mr. Sinojmeri or where he was being held captive.

On July 12, 2000, Mr. Sinojmeri's father-in-law gave the captors $5,000. He told them they would receive the rest of the ransom money after he saw that Mr. Sinojmeri was still alive. On July 18, 2000, the captors placed a hood over his head, transported him to a suburb of Tirana, and

released him. He was told that if he did not produce the balance by July 23, 2000, he would be killed. Mr. Sinojmeri's father-in-law and his cousin obtained fraudulent passports for him and his wife. On July 20, 2000, he and his wife were taken in a police car by a friend of his father-in-law to an airport so that they could enter it without being seen. Mr. and Mrs. Sinojmeri arrived in Chicago via Zurich on July 20, 2000. They were detained by immigration officers at Chicago O'Hare Airport.

Mr. Sinojmeri was interviewed by an immigration inspector on July 21, 2000. He admitted that at the time of his entry into the United States he presented an Albanian passport issued to Didani Mirgen, who was born on September 21, 1972. Mr. Sinojmeri paid $8,000 for the passports. He admitted he was not Mr. Mirgen. When asked by the immigration inspector the purpose of his trip to the United States, Mr. Sinojmeri replied: "Because my family is here and someone wants to kill me for money." He also stated that he feared that if he was removed to Albania he would be harmed. Mr. Sinojmeri signed a sworn statement setting forth the facts he disclosed to the immigration inspector.

On August 23, 2000, Asylum Officer William Tomyanovich interviewed Mr. Sinojmeri to determine whether he might be eligible for asylum or protection from removal to a country where he feared persecution or torture. Mr. Sinojmeri responded that he was mistreated by a mafia group headed by a man who said his name was Al Capone. He also stated this mafia group threatened to kill him unless he paid them $20,000. They shot into the air with their guns. They kidnaped him and tortured him for sixteen days. Mr. Sinojmeri stated that if he returned to Albania, the mafia

would torture or kill him. The police would not protect him because they are corrupt and allied with the mafia. The Asylum Officer found that Mr. Sinojmeri had alleged facts that supported the possibility that he could establish eligibility for asylum.

II

A

Removal proceedings were commenced on August 4, 2000, with the filing of a notice to appear ("NTA"). The NTA charged Mr. Sinojmeri with being subject to removal as an arriving alien who is not in possession of a valid passport. The NTA was served on Mr. Sinojmeri on August 20, 2000.

B

Mr. Sinojmeri appeared before an IJ on January 19, 2001, for a determination whether he should be removed from the United States because his entry was illegal. He testified under oath that he was properly served with the NTA. His attorney stated that "[t]he allegations are admitted and the grounds for removability are conceded." Based on this concession, the IJ ordered that Mr. Sinojmeri be removed from the United States to Albania. Mr. Sinojmeri's counsel orally informed the IJ that his client was seeking relief from removal based upon a request for asylum, withholding of removal, and protection under CAT.

The IJ then inquired whether it was necessary "to provide you with an application" for asylum. The IJ stated: "There's an asylum application right there. Is there one already in the file?" Mr. Sinojmeri's counsel replied that he did not believe that an application for asylum had been filed. The IJ ordered that the hearing in Mr. Sinojmeri's application for relief from removal be heard on May 4, 2001.

C

The May 4, 2001, hearing was rescheduled to be heard on November 2, 2001. Mr. Sinojmeri submitted his application for asylum, withholding of removal, and protection under CAT at the beginning of the November 2, 2001, proceeding.

The IJ denied the application for asylum as untimely because it was filed more than one year after his entry into the United States on July 21, 2000. The IJ then ordered that an evidentiary hearing on the merits of Mr. Sinojmeri's application for withholding of removal and protection under CAT be held on February 14, 2002. The hearing was subsequently continued until February 11, 2004.

The IJ found that Mr. Sinojmeri's testimony that he was persecuted by a lawless criminal element in Albania was credible. The IJ found, however, that Mr. Sinojmeri failed to demonstrate that he was "targeted for discrimination in accordance with the Immigration and Nationality Act based on any of the five protected grounds." The IJ concluded that Mr. Sinojmeri was the victim of criminal extortion efforts, but this conduct does "not constitute persecution motivated by political

opinion." The IJ denied Mr. Sinojmeri's application for withholding of removal and protection under CAT on the merits and ordered his removal to Albania.

## III

On March 11, 2004, Mr. Sinojmeri filed a timely notice of appeal before the BIA. In his brief in support of his appeal, he contended that the IJ erred in concluding that his application for asylum was not timely filed. He also argued that he was entitled to a reversal of the IJ's decision because he presented sufficient evidence to demonstrate past persecution, and the presumption of future persecution was not rebutted by the Government.

Mr. Sinojmeri's appeal to the BIA was dismissed in a "per curiam" opinion signed by a single BIA member. The BIA adopted and affirmed the IJ's decision on June 13, 2005. Mr. Sinojmeri filed a timely petition for review.

## IV

### A

In his brief in support of his petition for review, Mr. Sinojmeri first contends that he was denied his due process right to receive a fair review of his appeal to the BIA because it was considered by a single BIA member under the Attorney General's "streamlining" procedures. In footnote 20 of its Respondent's brief, the Government maintains that this Court does not have the jurisdiction to consider whether the streamlining procedures violated his constitutional right to due

process because this issue was not presented in the administrative record of the IJ's proceeding. The Government cited 8 U.S.C. § 1252(b)(4)(A) for this proposition. Section 1252(b)(4)(A) provides that "the court of appeals shall decide the petition only on the administrative record on which the order of removal is based[.]"

The Government failed to cite or attempt to distinguish this Court's opinion in *Bangura v. Hansen*, 434 F.3d 487 (6th Cir. 2006). In *Bangura*, this Court concluded as follows:

> Exhaustion of administrative remedies may not be required in cases of non-frivolous constitutional challenges to an agency's procedures. *Southern Ohio Coal Co. v. Office of Surface, Mining, Reclamation and Enforcement*, 20 F.3d 1418, 1425 (6th Cir. 1994). In the immigration context, several circuits have indicated that "constitutional challenges to the INA and INS procedures and some due process claims do not require exhaustion because the BIA does not have the power to adjudicate those claims."

*Id.* at 494.

This court held in *Bangura* that "[a]lthough the BIA undoubtedly could grant Plaintiffs some relief and possibly render Plaintiffs' procedural due process claim moot, it does not have the authority to adjudicate Plaintiffs' substantive due process claim." *Id*. This Court concluded that "the district court abused its discretion in dismissing Plaintiffs' procedural due process claim for failure to exhaust administrative remedies." *Id*. Thus, contrary to the Government's assertion, this Court has the jurisdiction to determine whether the Attorney General's streamlining procedures violate due process.

In *Denko v. INS*, 351 F.3d 717 (6th Cir. 2003), this Court held that the BIA's streamlined proceedings do not violate an alien's rights to due process. *Id* at 729-730. Therefore, we reject Mr. Sinojmeri's contention that he was denied due process by the BIA's adherence to the streamlining procedures. *Denko* was decided and filed on December 8, 2003. Terrence G. Hoerman, Mr. Sinojmeri's counsel, filed the petitioner's brief in this matter on May 9, 2006. Mr. Hoerman failed to cite the *Denko* decision, notwithstanding the fact it had been the law of this circuit for more than two years before he filed the brief.

Because *Denko* is a published opinion of this Court that is directly contrary to the position Mr. Hoerman has presented in this appeal, it was his professional responsibility to disclose it to this Court. *See Lumaj v. Gonzales*, No. 05-3350, 2006 U.S. App. LEXIS 22640 at *3 n.1 (6th Cir. Sept. 6, 2006). In *Lumaj,* this Court warned Mr. Hoerman that his failure to comply with his duty to disclose dispositive legal authority in this circuit someday might warrant monetary sanctions and disbarment. *Id*. Because *Lumaj* was decided after Mr. Hoerman filed his brief in this matter, we will not impose any sanctions against him at this time. *See Lumaj*, 2006 U.S. App. LEXIS 22640. He is now on notice, however, that he faces serious consequences if he does not comply with the rules of professional conduct in future cases. *Id.* at *3 n.1.

B

Mr. Sinojmeri also asserts that the IJ erred in concluding that his application for asylum was pretermitted on procedural grounds because he failed to file it within one year of entering the United States. We disagree.

An application for asylum may be filed by an alien who arrives in the United States "irrespective of such alien's status[.]" 8 U.S.C. § 1158(a)(1). Section 1158(a) (1) does not apply "unless the alien demonstrates by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States." 8 U.S.C.§ 1158(a)(2)(B).

An application for asylum may be considered, even if filed more than one year after the alien's entry into the United States, if the alien demonstrates "the existence of . . . extraordinary circumstances relating to the delay in filing an application within the period specified in subparagraph (B)." 8 U.S.C. § 1158(a)(2)(D). The record shows that Mr. Sinojmeri entered the United States on July 21, 2000. He did not submit his application for asylum until November 2, 2001, more than a year after he entered the United States. Further removal proceedings in this matter were held on November 2, 2001. On that date, the IJ inquired of counsel why the application for asylum was submitted more than one year after Mr. Sinojmeri entered the United States. His counsel informed the IJ that it was the first opportunity he had to file it before the court. The IJ informed counsel that "if you have a year deadline coming, you have to file a motion to accelerate the time to come in and file an application." In response, counsel stated: "I've had a great difficulty getting an

earlier hearing here in Detroit."[1]  The record shows that an application for asylum could have been timely filed on January 19, 2001, when Mr. Sinojmeri appeared in court for his removal proceedings. In fact, on that date, the IJ inquired of Mr. Sinojmeri's counsel whether an application was on file, and offered to provide him one.  The IJ concluded in the proceedings held on November 2, 2001 that, while the application for asylum was untimely, it would be treated as "an application for withholding of removal and relief under the Convention Against Torture, and I will give you a hearing date for that."  Because Mr. Sinojmeri's application for asylum was filed more than one year after he entered into the United States, we have no jurisdiction to review the merits or the timeliness of this claim pursuant to 8 U.S.C. § 1158(a)(3)[2].

C

On February 11, 2004, an IJ conducted an evidentiary hearing to determine whether Mr. Sinojmeri could demonstrate that he was entitled to withholding of removal or protection under the CAT.  After considering Mr. Sinojmeri's testimony regarding the kidnaping and extortion, the IJ found that Mr. Sinojmeri "was a victim of lawlessness and a criminal element in Albania."  The IJ also noted that:

---

[1] In subsequent proceedings held on February 11, 2004, Mr. Sinojmeri's counsel informed the IJ that he could not comply with the one-year time limitation because "in Detroit, the filing through the window is not permitted, it has to be in court, your Honor."  No evidence was offered to support this contention.

[2] Section 1158(a)(3) provides as follows: "No court shall have jurisdiction to review any determination of the Attorney General under paragraph (2)."

> It is well recognized that even criminal extortion efforts do not constitute persecution on account of political opinion, when its reasonable to conclude that those who threaten or harm are not motivated by political opinion. Here the evidence supports the conclusion that extortion related to the respondent's ability to pay or his family's ability to pay and nothing more.

The IJ also found that Mr. Sinojmeri had failed to "set forth any facts or circumstances to show that it is more likely than not that he would be tortured if forced to return to Albania." The IJ denied Mr. Sinojmeri's application for withholding of removal and for protection under the CAT.

Mr. Sinojmeri maintains that the IJ erred in finding that the criminals who kidnaped him and extorted money from his father-in-law did not do so to persecute him on account of his race, religion, nationality, membership in a particular social group, or political opinion. Withholding of removal is mandatory if an alien establishes that his "life" or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1231(b)(3)(A).

Mr. Sinojmeri argues that he "established through his credible testimony, that he was persecuted in the past by a group, that the Albanian government was unwilling or unable to control." He has failed to cite any portion of the record that demonstrates that he was persecuted because of his race, religion, nationality, membership in a social group, or political opinion. We have reviewed his testimony in the record. It supports the IJ's finding that "the extortion related to [Mr. Sinojmeri's] ability to pay, or his family's ability to pay and nothing more." Mr. Sinojmeri has failed to demonstrate that there is a clear probability that he will be subject to persecution in any of the

enumerated grounds if he is forced to return to Albania as required under *INS v. Stevic*, 467 U.S. 407, 413 (1984).

We may not disturb the findings of the BIA or an IJ unless a petitioner shows that "the evidence not only *supports* [a contrary finding], but *compels* it[.]" *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992) (emphasis in original); *see* 8 U.S.C. § 1252(b)(4) ("the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary[.]"). Mr. Sinojmeri has not met that burden.

D

Mr. Sinojmeri asserts that he is entitled to the protection of the CAT. His brief, however, does not present any argument that supports this contention. His reference to the CAT is contained in the following sentence: "The lower court erred in finding Petitioner's application for asylum as untimely, and denying withholding of removal under the Act and CAT, and dismissing the appeal."

Mr. Sinojmeri has forfeited his right to have this Court address his CAT claim because he failed to present an argument in support of it with relevant citations to the record and dispositive authority. "[A]rguments not raised in the proponent's opening brief on appeal are generally considered abandoned." *Youghiogheny and Ohio Coal Co. v. Milliken*, 200 F.3d 942, 955 (6th Cir. 1999) (citing *Robinson v. Jones*, 142 F. 3d 905, 906 (6th Cir. 1998)); *Enertech Elec., Inc. v. Mahoning County Com'rs*, 85 F. 3d 257, 259 (6th Cir. 1996).

The petition for review is denied.